Jerry JOHNSON, Plaintiff/Appellee,

v.

MIDWESCO, INC., Amerisure Compa-
nies, and Michigan Mutual Insur-
ance Company, Defendants/Appellants.

Supreme Court of Tennessee,
at Nashville.

Dec. 31, 1990.

D. Robert Black, Jr., Stewart, Estes &
Donnell, Nashville, for defendants/appel-
lants.

Frank Buck, Smithville, for plaintiff/ap-
pellee.

## OPINION

ANDERSON, Justice.

In this worker's compensation appeal, the trial court found the employee had suffered a 65 percent permanent partial disability as a result of an occupational lung disease. The employer insists there is no material evidence to support the trial court's finding on causation and permanent disability. We disagree and affirm.

The employee-plaintiff, Jerry Johnson, aged 41, has a high school education. Since high school, he has worked in a variety of jobs requiring physical labor and possesses no special job skills. He was first employed by the defendant-employer, Midwesco, in April of 1978 in an unskilled capacity and has worked since then primarily in semi-skilled job classifications. At the time of trial he was still employed by Midwesco in a semi-skilled capacity.

On October 10, 1984, the plaintiff was brushing lime dust and rust from bushing casings in the conduit department of Midwesco. While he was so engaged, the dust came up into his face and was inhaled into his lungs even though he was wearing a face shield. Because he began to perspire, cough, and wheeze and to have difficulty breathing, he was rushed to the hospital emergency room. Upon arrival, his symptoms included shortness of breath, cyanosis, sweating, and extreme weakness. He was treated by Dr. Gary G. Gallant, a general practitioner, who found his respiration to be 32, and his pulse 120 and irregular. While lying down, he could not breathe, and blood gas tests showed a low oxygen level. Dr. Gallant concluded he was having significant respiratory distress, admitted him to the hospital, administered intravenous medications and broncho-dilator aerosol treatments, and diagnosed him as having asthma.

The plaintiff had worked and suffered breathing problems in the polyurethane "blue" building, where polyurethane is sprayed as insulation onto pipes, for four years preceding the October 1984 attack. From the 1984 attack to trial, he continued to have breathing problems in his work environment when dust or chemical fumes were present, and took daily medication. Dr. Gallant continued to treat him and (in 1987) recommended his removal from the polyurethane environment after another severe respiratory attack requiring hospitalization in April of 1987 following an exposure to chemical fumes. Dr. Gallant also recommended that he avoid not only the polyurethane fumes, but any enclosed room with chemical fumes or a dusty environment.

At trial, Dr. Gallant testified that within a reasonable degree of medical certainty, the plaintiff suffered a 20 percent permanent impairment as a result of his occupational disease. He said that, beginning with the October 1984 attack, the plaintiff's worst attacks were precipitated by the fumes at work. Dr. Gallant stated that as long as the plaintiff is on his Theodur medication and in an environment that is free from gases and irritants, he is able to function at work. When he does not take his medication or he is exposed to certain fumes, it becomes a "life-threatening condition."

Dr. Brevard Haynes, a specialist in pulmonary medicine, testified he saw the plaintiff on referral by the defendant on March 27, 1989. On examination, he observed wheezing and shortness of breath. Tests showed plaintiff's ability to exhale air completely was reduced to 71 percent of predicted. Plaintiff's ability to blow air out quickly was not impaired and those results were within normal limits. Dr. Haynes' diagnosis was isocyanate-induced asthma, which results from exposure to polyurethane fumes, and he recommended that plaintiff be removed from that exposure. He said that the only way to reach a firm determination on whether or not the plaintiff has reached maximum medical improvement would be to discontinue the plaintiff's medications. Based upon the tests administered, he found mild permanent impairment but attributed it to obesity.

Based on the foregoing proof, the trial court found that the plaintiff had sustained a 65 percent permanent partial disability as a result of his occupational disease.

■ Because this injury occurred before July 1, 1985, the review of this Court is limited to a determination of whether there is any material evidence in the record to support the findings of the trial judge. *See Helton v. Food Lion, Inc.*, 738 S.W.2d 626 (Tenn.1987). Consequently, this Court does not weigh evidence, nor decide the credibility of witnesses. Those issues are for the trial judge. *Carr v. Klopman Mills*, 665 S.W.2d 719, 721 (Tenn.1984); *Liberty Mutual Insurance Co. v. Taylor*, 590 S.W.2d 920 (Tenn.1979).

■ The defendant first argues that no causal connection has been proven between defendant's employment and the occupational disease. In *P & L Construction Company, Inc. v. Lankford*, 559 S.W.2d 793 (Tenn.1978), this Court held:

> A trial judge may properly predicate a worker's compensation award on medical proof establishing an incident "could be" the cause of plaintiff's injury when he also has before him lay testimony from which it may reasonably be inferred the incident caused the injury.

*Id.* at 794.

Here, Dr. Gallant clearly testified plaintiff's occupational disease—asthma—was "precipitated by the fumes at work" and that he diagnosed the disease on plaintiff's first visit of October 10, 1984. Even Dr. Haynes testified that the plaintiff would *probably* experience no symptoms if medication is discontinued, as long as isocyanate exposure is avoided, but that if symptoms continued after removal of medication, he would resume the medication and attribute the need to past exposure to isocyanates. The proof in the record satisfies the standard required for material evidence of causation.

■ The defendant also complains that Dr. Gallant's testimony as to permanent disability is speculative. Of course, permanency in worker's compensation cases must be established by expert medical testimony, *Blalock v. Williams*, 483 S.W.2d 578 (Tenn. 1972); *Floyd v. Tennessee Dickel Distilling Co.*, 463 S.W.2d 684 (Tenn.1971), and we have reversed awards for permanent disability where the medical testimony was speculative. *See Singleton v. Procon Products*, 788 S.W.2d 809 (Tenn.1990). In *Owens Illinois, Inc. v. Lane*, 576 S.W.2d 348 (Tenn.1978), this Court examined the issue of the standard of medical proof required for proof of permanent disability. We held:

> [A]ny expert medical witness presented must give testimony that preponderates in favor of permanency to qualify as having probative value on that issue. In short, the medical witness, in expressing his opinion, must use language that means that the medical factors that indicate permanency of disability outweigh those to the contrary.

*Id.* at 350. It is true that Dr. Gallant testified his selection of the precise number —20 percent—disability was arbitrary and a guess, but he testified with a reasonable degree of medical certainty that there was permanent disability and that the range was between 10 percent and 25 percent.

■ The trial court had the discretion to accept the opinion of one medical expert over another medical expert. *See Dorris v. INA Insurance Company*, 764 S.W.2d 538, 542 (Tenn.1989). As a result, the required material evidence of permanent disability is present in this record.

■ Finally, the defendant insists the evidence is insufficient to establish vocational disability. Vocational disability is not dependent on the degree of anatomical disability where a permanent condition is established by the medical proof. Rather, it is a function of the employee's earning capacity in the open labor market considering age, education, job skills, vocational training, local job opportunities, and other factors. *See Corcoran v. Foster Auto GMC, Inc.*, 746 S.W.2d 452, 458 (Tenn. 1988). At the time of trial, plaintiff was 41 years old, had a high school education, no vocational training, and job experience limited to physical labor-type jobs only. He was working in a semi-skilled position at Midwesco where he is limited to certain jobs because of the health work environment. The proof also shows polyurethane is a part of the work environment in other

employment in the state. We conclude there is material evidence to support the findings of the trial judge on this issue.

The plaintiff's motion for damages for frivolous appeal is denied.

Having found material evidence to support the trial court findings on all contested issues, including future medical expenses, its judgment is affirmed and the cause is remanded. The costs are taxed to the Appellants.

REID, C.J., and DROWOTA, O'BRIEN and DAUGHTREY, JJ., concur.