FILED

September 15, 2016

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time 9:14 AM



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT KNOXVILLE

| | | |
|---|---|---|
| **STEPHEN PARTILLA,** | ) | **Docket No.: 2016-03-0502** |
| Employee, | ) | |
| **v.** | ) | |
| **VELOCITY VENTURES, INC.,** | ) | **State File Nos.: 16161-2016** |
| Employer, | ) | **21649-2016** |
| **And** | ) | |
| **TECHNOLOGY INSURANCE CO.,** | ) | **Judge Pamela B. Johnson** |
| Carrier. | ) | |
| | ) | |

## EXPEDITED HEARING ORDER
## GRANTING MEDICAL AND TEMPORARY DISABILITY BENEFITS

This matter came before the undersigned Workers' Compensation Judge on August 17, 2016, upon the Request for Expedited Hearing filed by the Employee, Stephen Partilla, pursuant to Tennessee Code Annotated section 50-6-239 (2015). The central legal issue is whether Mr. Partilla sustained an injury on February 24, 2016, and/or March 10, 2016, arising primarily out of and in the course and scope of his employment with the Employer, Velocity Ventures, Inc., entitling him to temporary disability and medical benefits, including surgery. For the reasons set forth below, the Court holds Mr. Partilla sufficiently demonstrated that he is likely to succeed at a hearing on the merits on the central legal issue and orders Velocity to provide Mr. Partilla temporary disability and medical benefits.[1]

### History of Claim

Mr. Partilla is a forty-four-year-old high school graduate and resident of Knox County, Tennessee, who served in the United States Navy. He worked for Velocity as a service manager and lead technician. On February 24, 2016, he removed a large truck tire from a tire balancer and felt a pop in his low back and immediate "aggravated" symptoms in his right leg. (T.R. 1-4; Ex. 1.) The next day, due to increasingly intense

---

[1] A complete listing of the technical record and exhibits admitted at the Expedited Hearing is attached to this Order as an appendix.

pain in his back and legs, he sought treatment with his primary care physician, Dr. Jonathan Dee, who previously treated him for chronic back pain. (Ex. 1.) Dr. Dee obtained x-rays and ordered an MRI. The following week, he reported the injury to Human Resources. *Id.* (*See also* Ex. 2.)

Mr. Partilla continued working with daily symptoms until March 10, 2016, when he felt another pop in his lower back while removing a rear wheel from an F-250 pickup truck. *Id.* His leg went numb, he suffered a loss of bladder control, and he dropped to the ground. According to Mr. Partilla, his direct supervisor, Terry Williams, the Assistant Manager, "Charles," and another coworker, Wayne Carlisle, observed him on the ground. He reported the incident to Mr. Williams and requested a panel of physicians.[2] *Id.* Velocity offered Mr. Partilla a panel of physicians and he selected Dr. James K. Maguire as his authorized treating physician (ATP). (Ex. 3.) Velocity initiated temporary disability benefits and provided authorized medical treatment.

Dr. Maguire examined Mr. Partilla on April 5, 2016, and reviewed the MRI obtained following the February 24, 2016 work event, noting a small recurrent disc herniation on the right at the L5-S1 level. (Ex. 5, pp. 184-188.) Dr. Maguire diagnosed Mr. Partilla with intervertebral disc disorders with myelopathy of the lumbar regions and radiculopathy of lumbar region. (Ex. 5, pp. 184-188.) Dr. Maguire additionally ordered a new MRI scan due to the second injury of March 10, 2016, and placed Mr. Partilla off work. *Id.* (*See also* Ex. 5; p. 224.)

Mr. Partilla returned to see Dr. Maguire on April 12, 2016, and discussed the recent MRI findings. Dr. Maguire noted the repeat MRI showed evidence of recurrent disc herniation at the L5-S1 level on the right side "in addition to his chronic postoperative changes." (Ex. 5, pp. 189-192.) Dr. Maguire indicated:

> I suspect that his symptoms involving his right lower extremity are secondary to a combination of foraminal stenosis and now with a new recurrent disk herniation on the right side at 5-1 . . .

> I have reviewed his studies and reviewed his case and I think that one could make a justification that his problem at the 5-1 level and the recurrent disk herniation on the right side is acute and is what has produced his current symptoms. He had this on his MRI of 03/08 and so I would attribute this actually to his on-the-job injury that occurred 02/24 . . .

> I think that surgery would be a reasonable option under the circumstances . . . As to causation, I do think it is reasonable to attribute this to the accident

---

[2] Mr. Partilla testified he went on a family cruise, previously scheduled, on March 12, 2016. He further testified he thought the time off from work would help relieve his symptoms. He noted the return drive home from Port Canaveral in Florida was excruciating and took fifteen hours to complete.

that occurred on 02/24 being greater than 51% of why he has the significant pain that he has now. He reports that he was doing heavy physical activity prior to this.

(Ex. 5, p. 192.) Dr. Maguire discussed operative versus non-operative treatment, and Mr. Partilla opted to proceed with surgery. (Ex. 5; pp. 189-192.) In the interim, Dr. Maguire assigned temporary restrictions of no lifting greater than fifteen pounds with no repetitive stooping or bending. *Id.* (*See also* Ex. 5; p. 223.)

Velocity continued to provide authorized medical treatment and temporary disability benefits pending an employer's examination. Velocity sent Mr. Partilla for an employer's examination with Dr. Edward Kahn on May 4, 2016. (Ex. 5; pp. 2-4.) Dr. Kahn diagnosed "acute on chronic back and right leg pain." *Id.* at 4. In his report, Dr. Kahn indicated:

> [I]t is hard for me to ascribe his current complaints to his work injuries of February 24, 2016 and March 10, 2016. At most he suffered an acute exacerbation of a pre-existing problem. It is my opinion his current complaints do not cross the 50% threshold for an acute injury. While he may benefit from surgical intervention, I do not believe his current employer is responsible for the chronic condition that he suffers from.

*Id.* Mr. Partilla testified that Velocity issued his last temporary disability check on May 23, 2016.

Dr. Maguire performed a decompression and instrumented lumbar fusion at L5-S1 on June 6, 2016. (Ex. 5, pp. 203-205.) Post-operatively, Mr. Partilla reported marked improvement in his symptoms with elimination of his leg pain. (Ex. 5; pp. 193-202.) Dr. Maguire placed him off work following surgery. *Id.* (*See also* Ex. 5; p. 222.) On July 19, 2016, Mr. Partilla reported he was doing well and "contemplating changing professions and maybe going into nursing." (Ex. 5; p. 201.) Dr. Maguire told Mr. Partilla that he "would generally restrict a person to no patient lifting for at least 4 months" but indicated Mr. Partilla should "remain out of work in the interim" and follow up in two months. *Id.* (*See also* Ex. 5; p. 221.) Mr. Partilla testified Velocity failed to accommodate his restrictions and subsequently terminated his employment.

Mr. Partilla sustained a previous injury to his low back in 2004 while working as an auto mechanic and underwent a L5-S1 hemilaminectomy on August 30, 2004. (Ex. 5; p. 2.) Post-operatively, his treating physician assigned heavy level work restrictions. *Id.* He underwent a redo L5-S1 discectomy and decompression on August 7, 2008.[3] *Id.* at

---

[3] The surgical report lists the Procedure Performed as "Right redo L4-5 discectomy for decompression." However, the body of the surgical report indicates the disc was herniated at the L5-S1 disc space. (Ex. 5, pp. 84-86.)

3

84-86. Following the second surgery, Mr. Partilla continued to treat for lumbar and right leg pain, received periodic steroid injections, and was prescribed narcotic pain medication from the date of his first surgery and until the February and March 2016 work events. (*See generally* Ex. 5.)

Mr. Partilla acknowledged his prior back surgeries and treatment. He testified his prior back complaints and pain did not prevent him from performing his job duties or daily activities. He further stated with regulated pain medication, he remained extremely active at work and at home. Despite his continued pain complaints, a third surgery was not scheduled until the February and March 2016 work events occurred. Mr. Partilla testified that following those events, his back and right leg pain were "greatly amplified," and he experienced difficulty bending over, sitting or standing for long time periods, and putting on or removing his shoes.

At the Expedited Hearing, Mr. Partilla argued the authorized treating panel physician (ATP), Dr. Maguire opined that Mr. Partilla's recurrent disc herniation at L5-S1 that necessitated surgery was "greater than 51%" caused by the February 2016 work event. Because Dr. Maguire's causation opinion is presumed correct, Mr. Partilla averred he is entitled to past and future medical benefits and temporary disability benefits.

Velocity countered Dr. Maguire did not review medical records documenting Mr. Partilla's significant pre-existing medical history. In contrast, Dr. Kahn thoroughly reviewed and considered Mr. Partilla's prior records, which outlined his ongoing low back and right leg complaints and treatment for chronic pain. Dr. Kahn considered all causes and opined Mr. Partilla's complaints did not cross the 50% threshold for an acute injury. Velocity argued Mr. Partilla's low back condition did not primarily arise from the February and March 2016 work events and, therefore, it should not be liable for medical benefits or temporary disability benefits.

**Findings of Fact and Conclusions of Law**

The Court now turns to the legal principles it must apply to grant or deny Mr. Partilla the benefits he requests. Mr. Partilla need not prove every element of his claim by a preponderance of the evidence in order to recover temporary disability and/or medical benefits at an Expedited Hearing. *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). Instead, he must come forward with sufficient evidence from which this Court might determine he is likely to prevail at a hearing on the merits. *Id.*; Tenn. Code Ann. § 50-6-239(d)(1) (2015).

This lesser evidentiary standard does not relieve Mr. Partilla of the burden of producing evidence of an injury by accident that arose primarily out of and in the course and scope of employment at an Expedited Hearing, but "allows some relief to be granted

4

if that evidence does not rise to the level of a 'preponderance of the evidence.'" *Buchanan v. Carlex Glass Co.*, No. 2015-01-0012, 2015 TN Wrk. Comp. App. Bd. LEXIS 39, at *6 (Tenn. Workers' Comp. App. Bd. Sept. 29, 2015). In analyzing whether he met his burden, the Court will not remedially or liberally construe the law in his favor, but instead shall construe the law fairly, impartially, and in accordance with basic principles of statutory construction favoring neither Mr. Partilla nor Velocity. See Tenn. Code Ann. § 50-6-116 (2015).

With the above principles in mind, an injury must arise primarily out of and occur in the course and scope of the employment to be compensable under the Workers' Compensation Law. *McCaffery v. Cardinal Logistics*, No. 2015-08-0218, 2015 TN Wrk. Comp. App. Bd. LEXIS 50, at *8-9 (Tenn. Workers' Comp. App. Bd. Dec. 10, 2015); *see also* Tenn. Code Ann. § 50-6-102(14) (2015). The term "injury" is defined as "an injury by accident . . . arising primarily out of and in the course and scope of employment, that causes death, disablement or the need for medical treatment of the employee." *Id.* For an injury to be accidental, it must be "caused by a specific incident, or set of incidents, arising primarily out of and in the course and scope of employment, and is identifiable by time and place of occurrence." Tenn. Code Ann. § 50-6-102(14)(A) (2015).

In the present case, Mr. Partilla testified that, on February 24, 2016, he removed a large truck tire from a tire balancer and felt a pop in his low back and immediate "aggravated" symptoms in his right leg. He further stated he continued working with daily symptoms until March 10, 2016, when he felt another pop in his lower back while removing a rear wheel from an F-250 pickup truck. This Court finds Mr. Partilla to be credible. This Court found it significant that, in spite of the prior back problems, Mr. Partilla was able to work, and it was only after these incidents that he had disabling pain that prevented him from working. The Court concludes that Mr. Partilla established that he sustained an injury to his low back and right leg "caused by a specific incident, or set of incidents," and "identifiable by time and place of occurrence."

The issue therefore turns to whether Mr. Partilla demonstrated he is likely to prevail at a hearing on the merits on the issue of whether he sustained an injury on February 24, 2016, and/or March 10, 2016, arising primarily out of and in the course and scope of his employment with Velocity. The Workers' Compensation Law provides that an injury "arises primarily out of and in the course and scope of employment" only if it has been shown by a preponderance of the evidence that the employment contributed more than fifty percent in causing the injury, considering all causes. Tenn. Code Ann. § 50-6-102(14)(B) (2015). An injury causes death, disablement, or the need for medical treatment only if it has been shown to a reasonable degree of medical certainty that it contributed more than fifty percent in causing the death, disablement, or need for medical treatment, considering all causes. *Id.* at § 50-6-102(14)(C). "Shown to a reasonable degree of medical certainty" means that, in the opinion of the physician, it is more likely than not considering all causes, as opposed to speculation or possibility. *Id.* at (14)(E).

The opinion of the treating physician, selected by the employee from the employer's designated panel of physicians, shall be presumed correct on the issue of causation, but the presumption is rebuttable by a preponderance of the evidence. *Id.*

Here, Velocity provided Mr. Partilla a panel of physicians and he selected Dr. Maguire. As such, Dr. Maguire's opinion is entitled to a presumption of correctness on the issue of causation but his opinion may be rebutted by a preponderance of the evidence.

Generally, a trial court has the discretion to choose which expert to accredit when there is a conflict of expert opinions. *Brees v. Escape Day Spa & Salon,* No. 2014-06-0072, 2015 TN Wrk. Comp. App. Bd. LEXIS 5, at *14 (Tenn. Workers' Comp. App. Bd. Mar. 12, 2015) (citing *Kellerman v. Food Lion, Inc.,* 929 S.W.2d 333, 335 (Tenn. 1996); *Johnson v. Midwesco, Inc.,* 801 S.W.2d 804, 806 (Tenn. 1990)). In evaluating conflicting expert testimony, a trial court may consider, among other things, "the qualifications of the experts, the circumstances of their examination, the information available to them, and the evaluation of the importance of that information through other experts." *Id.* (citing *Orman v. Williams Sonoma, Inc.,* 803 S.W.2d 672, 676 (Tenn. 1991)).

The ATP, Dr. Maguire, reviewed the MRIs obtained following the February and March 2016 work events. On the MRI obtained following the February work event, Dr. Maguire noted a small recurrent disc herniation on the right at the L5-S1 level. Because of the March 10, 2016 work event, Dr. Maguire ordered another MRI and noted the repeat MRI showed evidence of recurrent disc herniation at the L5-S1 level on the right side "in addition to his chronic postoperative changes." In addition to the review of the diagnostic testing performed following each work event, the medical records reflect Mr. Partilla advised Dr. Maguire of his pre-existing back injuries and his prior back surgeries. With this knowledge, Dr. Maguire concluded, "I do think it is reasonable to attribute this to the accident that occurred on 02/24 being greater than 51% of why he has the significant pain that he has now."

Dr. Kahn, who conducted the employer's exam, also reviewed the MRIs and noted a small disc protrusion causing narrowing at L5-S1 on the right side. Dr. Kahn additionally reviewed voluminous historical medical records. Dr. Kahn ultimately concluded, "At most he suffered an acute exacerbation of a pre-existing problem. It is my opinion his current complaints do not cross the 50% threshold for an acute injury."

After careful consideration of the medical records submitted in this case, this Court finds Dr. Maguire's opinion more persuasive and concludes Dr. Kahn's opinion failed to rebut the presumption of correctness afforded Dr. Maguire's opinion. Accordingly, this Court concludes Mr. Partilla demonstrated he is likely to prevail at a hearing on the merits on the issue of whether he sustained an injury on February 24, 2016, and/or March 10, 2016, arising primarily out of and in the course and scope of his

employment with Velocity.

This Court now turns to the issue of Mr. Partilla's entitlement to medical benefits. Under Workers' Compensation Law, "the employer or the employer's agent shall furnish, free of charge to the employee, such medical and surgical treatment . . . made reasonably necessary by accident[.]" Tenn. Code Ann. § 50-6-204(a)(1)(A) (2015). "The injured employee shall accept the medical benefits. . . provided that in any case when the employee has suffered an injury and expressed a need for medical care, the employer shall designate a group of three (3) or more independent reputable physicians. . . from which the employee shall select one (1) to be the treating physician." *Id.* at (a)(3)(A)(i). In light of the above, this Court concludes Mr. Partilla demonstrated he is likely to prevail at a hearing on the merits on the issue of entitlement to medical benefits. Therefore, he is entitled to medical treatment made necessary by his February 24, 2016 and March 10, 2016 work injuries to his low back and right leg, in accordance with Tennessee Code Annotated section 50-6-204 (2015). Velocity shall pay for Mr. Partilla's past medical expenses incurred and made reasonably necessary by the February 24, 2016 and March 10, 2016 work injuries. Dr. Maguire shall remain the authorized treating physician for the low back and right leg injury.

The next issue this Court must consider is Mr. Partilla's eligibility for temporary disability benefits. An injured worker is eligible for temporary disability benefits if: (1) the worker became disabled from working due to a compensable injury; (2) there is a causal connection between the injury and the inability to work; and (3) the worker established the duration of the period of disability. *Jones v. Crencor Leasing and Sales*, No. 2015-06-0332, 2015 TN Wrk. Comp. App. Bd. LEXIS 48, at *7 (Tenn. Workers' Comp. App. Bd. Dec. 11, 2015) (citing *Simpson v. Satterfield*, 564 S.W.2d 953, 955 (Tenn. 1978)). Temporary total disability benefits are terminated either by the ability to return to work or attainment of maximum recovery. *Id.*

Temporary partial disability benefits, a category of vocational disability distinct from temporary total disability, is available when the temporary disability is not total. *Id.; see also* Tenn. Code Ann. § 50-6-207(1)-(2) (2015). Specifically, "[t]emporary partial disability refers to the time, if any, during which the injured employee is able to resume some gainful employment but has not reached maximum recovery." *Id.* (citing *Williams v. Saturn Corp.*, No. M2004-01215-WC-R3-CV, 2005 Tenn. LEXIS 1032, at *6 (Tenn. Workers' Comp. Panel Nov. 15, 2005)). Thus, in circumstances where the treating physician has released the injured worker to return to work with restrictions prior to maximum medical improvement, and the employer either (1) cannot return the employee to work within the restrictions or (2) cannot provide restricted work for a sufficient number of hours and/or at a rate of pay equal to or greater than the employee's average weekly wage on the date of injury, the injured worker may be eligible for temporary partial disability. *Id.*

7

Here, on April 12, 2016, Dr. Maguire assigned temporary restrictions of no lifting greater than fifteen pounds with no repetitive stooping or bending. Mr. Partilla testified Velocity could not accommodate his restrictions and ultimately terminated his employment. He further testified Velocity issued his last temporary disability benefits check on May 23, 2016. Following his June 6, 2016 surgery, Dr. Maguire placed Mr. Partilla off work. On July 19, 2016, Dr. Maguire recommended that Mr. Partilla remain off work until his follow up appointment in two months, which fell on or about September 19, 2016. Mr. Partilla's ability to work following September 19, 2016, is presently unknown. Based on the foregoing, this Court concludes Mr. Partilla demonstrated he is likely to prevail at a hearing on the merits regarding entitlement to temporary disability benefits. Therefore, he is entitled to temporary partial disability benefits and Velocity shall pay him past temporary partial disability benefits from the date of his last temporary disability check on May 23, 2016, through June 5, 2016, in a lump sum payment. Mr. Partilla is additionally entitled to temporary total disability benefits and Velocity shall pay him temporary total disability benefits from the date of surgery on June 6, 2016, through September 19, 2016. Thereafter, Velocity shall continue to pay Mr. Partilla temporary disability benefits in accordance with Tennessee Code Annotated section 50-6-207 (2015).

**IT IS, THEREFORE, ORDERED** as follows:

1. Velocity shall authorize and pay for medical care for Mr. Partilla's injuries as required by Tennessee Code Annotated section 50-6-204 (2015). Dr. Maguire shall remain the authorized treating physician for the low back and right leg injury.

2. Velocity shall pay for Mr. Partilla's past medical expenses incurred and made reasonably necessary by the February 24, 2016 and March 10, 2016 work injuries. Mr. Partilla or the medical providers shall furnish medical bills to Velocity or its workers' compensation carrier.

3. The amount of temporary disability benefits is $606.88 per week based on Mr. Partilla's average weekly wage of $910.32.

4. Velocity shall pay Mr. Partilla past temporary partial disability benefits from the date of his last temporary disability check dated May 23, 2016, through June 5, 2016, in a lump sum payment.

5. Velocity shall additionally pay Mr. Partilla temporary total disability benefits from the date of surgery on June 6, 2016, through September 19, 2016. Accrued benefits shall be paid in a lump sum.

6. Venture shall continue to pay Mr. Partilla temporary disability benefits in regular intervals until he becomes ineligible for those benefits by reaching maximum

8

medical improvement, by returning to work at a wage equal to or greater than the pre-injury wage, or by release without restrictions by the authorized treating physician. Venture Velocity shall immediately notify the Bureau, and Mr. Partilla of the intent to terminate temporary disability benefits by filing Form C-26, and citing the basis for the termination.

7. This matter is set for an Initial (Scheduling) Hearing on **November 3, 2016**, at **10:00 a.m. Eastern Time**. The parties must call (865) 594-0091 or (855) 543-5041 toll free to participate in the Initial Hearing. Failure to appear by telephone may result in a determination of the issues without your further participation.

8. Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3) (2015). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.

9. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit by email at WCCompliance.Program@tn.gov or by telephone at (615) 253-1471 or (615) 532-1309.

**ENTERED this the 15th day of September, 2016.**

**HON. PAMELA B. JOHNSON**
**Workers' Compensation Judge**

<u>Right to Appeal</u>:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

9

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a filing fee in the amount of $75.00. Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within five business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within five business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

## APPENDIX

Technical Record:
- Petition for Benefit Determination, filed May 18, 2016;
- Employer's Position Statement, submitted June 7, 2016;
- Dispute Certification Notice, filed June 15, 2016;
- Request for Expedited Hearing, filed June 30, 2016;
- Response to Employee's Request for Expedited Hearing, filed July 11, 2016;
- Pre-Hearing Order, issued July 20, 2016;
- Motion to Quash Deposition, filed August 4, 2016;
- Response to Employee's Motion to Quash Notice of Deposition regarding Dr. Edward Kahn, filed August 5, 2016; and
- Order Granting Motion to Quash and Prehearing Order, issued August 12, 2016.

The Court did not consider attachments to Technical Record filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence.

Stipulations of Fact:
- The alleged dates of injury are February 24, 2016, and March 10, 2016.
- Mr. Partilla's average weekly wage is $910.32, which correlates to a workers' compensation rate of $606.88 per week.

Exhibits:
- EXHIBIT 1: Affidavit of Stephen Partilla;[4]
- EXHIBIT 2: First Report of Work Injury, Form C20;
- EXHIBIT 3: Choice of Physician, Form C42, executed;
- EXHIBIT 4: Wage Statement, Form C41;
- EXHIBIT 5: (Collective) Table of Contents and Medical Records:
  - Tennessee Orthopaedic Clinic, numbered pp. 1-4;
  - Abercrombie Radiology, numbered pp. 5-8;
  - Baptist Hospital West, numbered pp. 9-12;
  - Healthsouth Diagnostic Center, numbered pp. 13-15;
  - Neurosurgery and Spine Consultants of East Tennessee, numbered pp. 16-63;
  - Parkwest Medical Center, numbered pp. 64-91;
  - Summit Medical Center, numbered pp. 92-182; and
  - Knoxville Orthopaedic Clinic, numbered pp. 183-228; and
- EXHIBIT 6: Notice of Mediated Agreement.

---

[4] Velocity Ventures moved to strike paragraphs 10, 11, and 19 contained in Exhibit 1 on grounds of hearsay. Mr. Partilla raised no objection to striking the paragraphs. Therefore, this Court granted the motion to strike paragraphs 10, 11, and 19 from Exhibit 1.

11

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 15th day of September, 2016.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|------|---------------|---------|-----------|------------------|
| Jonathan Doolan, Esq., Employee's Counsel | | | X | jonathan@collinsdoolan.com |
| Todd I. Heird, Esq., Employer's Counsel | | | X | tiheird@mijs.com |

**PENNY SHRUM, Court Clerk**
**WC.CourtClerk@tn.gov**

12