**FILED**

**December 21, 2016**

**TN COURT OF
WORKERS' COMPENSATION
CLAIMS**

**Time: 2:35 PM**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT NASHVILLE

| | | |
|---|---|---|
| Anthony Amofa, | ) | Docket No.: 2016-06-0773 |
| Employee, | ) | |
| v. | ) | State File No.: 10081-2016 |
| Yates Services, | ) | |
| Employer, | ) | Judge Kenneth M. Switzer |
| And | ) | |
| Traveler's Insurance Company, | ) | |
| Carrier. | ) | |

## EXPEDITED HEARING ORDER GRANTING MEDICAL BENEFITS

This case came before the undersigned Workers' Compensation Judge on December 19, 2016, on the Request for Expedited Hearing filed by Anthony Amofa pursuant to Tennessee Code Annotated section 50-6-239 (2016). The present focus of this case is the compensability of Mr. Amofa's claim and his entitlement to medical benefits.[1] For the reasons set forth below, the Court holds he appears likely to prevail at a hearing on the merits in proving that he sustained an injury as defined within the Workers' Compensation Law and is therefore entitled to the requested medical benefits.

### History of Claim

Mr. Amofa is a fifty-year-old resident of Davidson County, Tennessee. He works at Yates, a staffing agency for Nissan, as an associate in manufacturing services. He testified that, on January 2, 2016, while working on the assembly line, he "started having problems lifting the screwing machine to work." (Ex. 1 at 1.) He began falling behind and stopped the line twice. *Id.* Eventually the "lead" adjusted the machine, and afterward Mr. Amofa was able to operate it comfortably. *Id.* at 2. Approximately three hours later, Mr. Amofa began to experience pain in his waist. *Id.* Mr. Amofa clarified at

---

[1] The Petition for Benefit Determination states that Mr. Amofa seeks only medical benefits, while the Dispute Certification Notice lists his entitlement to medical and temporary disability benefits as disputed issues. However, the parties offered no argument regarding Mr. Amofa's entitlement to temporary disability benefits at the Expedited Hearing. Therefore, the Court considers the request waived at this time.

the Expedited Hearing that, by the term "waistline pain," he meant the pain radiated across the front and back of his body. Mr. Amofa wrote a similar description of how he became injured in an "Employee/Manager Medical Statement" dated February 8. (Ex. 11.) Yates introduced no evidence to contradict Mr. Amofa's testimony regarding the mechanism of injury.[2]

Over the next few days, the pain worsened and began radiating down to Mr. Amofa's thighs. *Id.* at 2. On January 26, he reported the injury to his supervisor, Sheila Geesling, who accompanied him to the Yates Safety Office. Staff there recommended Mr. Amofa see his personal physician. Despite his report of injury, Yates failed to file a First Report of Injury at that time.

Later that same day, Mr. Amofa saw Dr. John Adewumi, his personal physician. Progress Notes indicate he gave a history of back pain for one to two months and the mechanism of injury was "lifting at work." (Ex. 9 at 22.) Dr. Adewumi assessed low back pain and lower abdominal pain, noting, "symptoms and exams are most consistent of a benign musculoskeletal back injury." *Id.* at 25. He ordered x-rays and prescribed pain medications, including Hydrocodone and Metaxalone. (Ex. 1 at 3; Ex. 9 at 26; Ex. 10.) Mr. Amofa co-paid $30 for these medications.[3] (Ex. 10.) Dr. Adewumi additionally referred him to physical therapy. (Ex. 9 at 25.)

Mr. Amofa continued to work, and his symptoms gradually worsened. On February 8, Mr. Amofa again spoke with Ms. Geesling about the injury. The supervisor accompanied him to Premise Health, the onsite clinic for Nissan and Yates. Upon arrival at Premise Health, Mr. Amofa completed the Employee/Manager Medical Statement describing the January 2 incident. (Ex. 11.) He additionally signed a Choice of Physician form selecting Premise Health. (Ex. 3.) He explained they gave him the document and told him, "Your first time this is a form you have to sign." Yates completed a First Report of Injury form on that date, noting that Mr. Amofa saw his personal physician for "back pain" and that he felt "discomfort in his back and waist area." (Ex. 2.)

Once in the Premise Health exam room, Dr. Robert Tessler, a "fill-in doctor," questioned him about his diet, according to Mr. Amofa. (Ex. 1 at 4.) A one-page note documents the encounter. (Ex. 9 at 50.) Dr. Tessler assessed Mr. Amofa with, "[a]bdominal pain likely secondary to constipation and not primarily work related," and, "Will review records and x-ray once obtained but doubtful will support a work related

---

[2] The insurance adjuster wrote in the causation letter to Dr. Adewumi, the unauthorized physician, that, "Mr. Amofa is alleging a lower back injury on 1/2/16 that he stated [he] was not able to twist due to pain. *He didn't note a specific incident that caused the pain.*" (Ex. 7)(Emphasis added). The Court finds the adjuster's assertion that Mr. Amofa did not identify an injury-causing incident is incorrect.

[3] Mr. Amofa refilled the Hydrocodone prescription on March 30.

2

diagnosis." Dr. Tessler returned Mr. Amofa to regular duty. *Id.*

Mr. Amofa testified he returned to Premise some time later and saw Dr. Gilbert Woodall. There are no notes documenting the visit. According to Mr. Amofa, Dr. Woodall told him the injury was not work-related. Mr. Amofa questioned how he reached that conclusion, given that Dr. Woodall had not seen the x-rays. Dr. Woodall's response, per Mr. Amofa, was that whether or not he saw the x-rays, "I know how to treat a case." Dr. Woodall left the room at that point. Yates offered no evidence to contradict Mr. Amofa's account of this conversation.

At a visit to Premise on February 26, Mr. Amofa told N.P. Candace Humes he was returning "For follow up on lumbar pain claim." *Id.* at 52. She assessed him with "Low back pain-due to EE continuously seeking treatment from his PCP[4]" and recommended making this claim "NOT PRIMARILY WORK RELATED." (Emphasis in original.) NP Humes returned him to work with restrictions.

The insurance adjuster subsequently sent a letter to Premise. *Id.* at 55. Specifically, the adjuster asked, "Please provide your expert medical opinion, to a reasonable degree of medical certainty, as to whether Mr. Amofa's diagnosis and the need for treatment arises primarily out of and in the course and scope of employment with Yates." "No" is circled in the February 29, 2016 response. The letter is not addressed to any provider in particular, and it bears an illegible signature. In the margin next to the signature are the printed words, "Dr. Woodall." The Premise Health records contain no treatment notes documenting Dr. Woodall's examination of Mr. Amofa, nor are there any indications he reviewed his colleagues' treatment notes. Based on this letter, Yates denied Mr. Amofa's claim on March 3. (Exs. 4, 5.)

Several days after the denial, Mr. Amofa saw Dr. Terri Walker at Premise for the same back issues. (Ex. 9 at 54.) Dr. Walker's notes state, "Low back pain more likely from spondylosis and DDD as diagnosed by PCP." *Id.* The notes additionally confirmed that Mr. Amofa told her his claim was denied. Dr. Walker adopted the restrictions placed by Dr. Adewumi.

Meanwhile, Mr. Amofa continued treating with Dr. Adewumi. On February 25, he reported his back pain worsening. *Id.* at 18. Dr. Adewumi reviewed the x-rays and noted "mild multi-level spondylosis most advanced at L4-L5." *Id.* at 20. Dr. Adewumi noted the "plan: Explained that symptoms and exam are most consistent exacerbation of lumber [sic] spondylosis due to repetitive activity such as lifting and bending." *Id.* He diagnosed lumbago, recurrent; spondylosis without myelopathy or radiculopathy, lumbar region; exacerbated, and again referred Mr. Amofa to physical therapy. *Id.* Mr. Amofa

---

[4] The Court cannot understand this reference, which appears to convey that Mr. Amofa's injury was the result of continuous treatment with his personal physician.

participated in physical therapy from March 11-28, per a statement totaling $467.84. (Ex. 10.) He introduced into evidence only notes from the initial physical therapy evaluation (Ex. 9 at 47-48) but testified that physical therapy improved his condition.

The medical records suggest that Dr. Adewumi might have referred Mr. Amofa to an orthopedist at some point. *Id.* at 41. While there are no treatment records from an orthopedist, it appears Mr. Amofa saw Dr. Jason Haslam because Dr. Adewumi's records contain a May 31 MRI report listing Dr. Haslam as the referring physician. *Id.* at 49. That report contains a "history" that reads, "low back pain down both thighs since lifting strain in January 2016." *Id.*

Mr. Amofa returned to Dr. Adewumi on March 29, May 3 and June 6. At these visits, Dr. Adewumi diagnosed low back pain and kept him on restricted duty. Dr. Adewumi additionally responded to a causation letter from the insurance adjuster on December 9, 2016. (Ex. 7.) It asked, "Based on your review and evaluation, can you state with a reasonable degree of medical certainty that Mr. Amofa has sustained a work related injury that arose primarily out of and in the course and scope of employment at Yates?" He responded, "Yes," and wrote the "work-related diagnosis" as "low back pain & muscle spasm." *Id.*

Mr. Amofa testified that he took FMLA leave until returning to work at Yates but still experiences back pain after sitting for extended periods of time.

Mr. Amofa filed a Petition for Benefit Determination seeking medical benefits. At the Expedited Hearing, Mr. Amofa asserted the January 2 work incident aggravated the degenerative disc disease in his back and that the Premise Health providers reached an incorrect conclusion regarding causation. Yates countered that Mr. Amofa complained only of "waistline pain," which providers at Premise opined is non-work-related, and the Premise Health causation opinion is correct. Therefore, the denial was proper and Mr. Amofa is entitled to no additional benefits.

### Findings of Fact and Conclusions of Law

In order to grant or deny the relief Mr. Amofa seeks, the Court must apply the following general legal principles. Mr. Amofa, as the employee, bears the burden of proof on all prima facie elements of his workers' compensation claim. Tenn. Code Ann. § 50-6-239(c)(6) (2016); *see also Buchanan v. Carlex Glass Co.*, No. 2015-01-0012, 2015 TN Wrk. Comp. App. Bd. LEXIS 39, at *5 (Tenn. Workers' Comp. App. Bd. Sept. 29, 2015). At an expedited hearing, Mr. Amofa has the burden to come forward with sufficient evidence from which this Court can determine he is likely to prevail at a hearing on the merits. *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015).

4

The specific issue is whether Mr. Amofa suffered an injury as defined under the Workers' Compensation Law. The law defines an injury as "accidental" only if it is caused by a specific incident arising primarily out of and in the course and scope of employment. It excludes the aggravation of a preexisting condition "unless it can be shown to a reasonable degree of medical certainty that the aggravation arose primarily out of and in the course and scope of employment." Tenn. Code Ann. § 50-6-102(14)(A) (2016). "Shown to a reasonable degree of medical certainty" means that, in the opinion of the physician, it is more likely than not considering all causes, as opposed to "speculation or possibility." Tenn. Code Ann. § 50-6-102(14)(D) (2016). Also, the opinion of the authorized treating physician selected by the employee from a panel "shall be presumed correct on the issue of causation but this presumption shall be rebuttable by a preponderance of the evidence." Tenn. Code Ann. § 50-6-102(14)(E) (2016).

Here, Yates challenged Mr. Amofa's account of the mechanism of injury, noting that the lead adjusted the machinery Mr. Amofa operated on January 2 so that it became comfortable for him to resume using it. Yates, however, introduced no evidence to contravene Mr. Amofa's credible testimony regarding the pain he experienced as a result of operating the equipment. The fact that Yates altered the setting on the machinery to make it easier to use has no bearing on whether it already had caused Mr. Amofa pain and injury.

Yates additionally argued that Mr. Amofa only complained of waistline pain and never stated, "I hurt my back." These assertions are undermined by both the First Report of Injury form and the Premise records where NP Humes noted he was "here for follow up on lumbar pain claim."

It is undisputed that Yates provided a panel and Mr. Amofa chose Premise as the authorized treating physician, but only after arriving at Premise, not before, and under the apparent belief he would not obtain treatment unless he signed. Frankly, the Court is unsettled about this scenario. Nevertheless, under the Workers' Compensation Law, this selection results in a presumption that Premise Health providers' opinions on causation are correct but rebuttable by a preponderance of the evidence. Dr. Woodall apparently opined in a causation letter that Mr. Amofa's injury is not work-related; Dr. Adewumi reached the opposite conclusion.[5]

In resolving such a conflict between medical opinions, a trial court generally has the discretion to choose which expert to accredit. *Kellerman* v. *Food Lion, Inc.,* 929 S.W.2d 333, 335 (Tenn. 1996); *Johnson* v. *Midwesco, Inc.,* 801 S.W.2d 804, 806 (Tenn.

---

[5] In finding that Dr. Woodall opined the injury is not work-related, the Court notes the letter does not indicate to whom it was sent and the signature is illegible, yet it affords Premise Health and Yates the benefit of the doubt and accepts that the letter is what it purports to be.

5

1990). In evaluating conflicting expert testimony, a trial court may consider, among other things, "the qualifications of the experts, the circumstances of their examination, the information available to them, and the evaluation of the importance of that information through other experts." *Brees v. Escape Day Spa & Salon,* No. 2014-06-0072, 2015 TN Wrk. Comp. App. Bd. LEXIS 5, at *14 (Tenn. Workers' Comp. App. Bd. Mar. 12, 2015), *citing Orman* v. *Williams Sonoma, Inc.,* 803 S.W.2d 672, 676 (Tenn. 1991).

Applying these legal principles to the facts of this case, the Court observes that neither party submitted qualifications of either physician except to acknowledge that they are medical doctors. As for the circumstances of the examinations, the medical records document that three different providers from Premise–Dr. Tessler, N.P. Humes and Dr. Walker–actually examined Mr. Amofa. The Court disregards N.P. Humes' opinion because she is not qualified to assess causation. *See Dorsey v. Amazon.com,* No. 2015-01-0017, 2015 TN Wrk. Comp. App. Bd. LEXIS 13, at *10 (Tenn. Workers' Comp. App. Bd. May 14, 2015) ("The opinion of the nurse practitioner . . . did not and could not provide a valid basis for denial of the claim based on causation." (Citations omitted.)).

The Court finds Dr. Tessler did not render an opinion on causation, but rather engaged in speculation contrary to section 50-6-102(14)(D) when he noted he would "review the records and x-rays but doubtful will support a work-related diagnosis." There are no records suggesting he performed a record review or read the x-rays to make a final determination. As for Dr. Walker, her note dated March 11–seven days after Yates denied the claim and eleven days after Dr. Woodall's purported non-work-related finding – contains a history outlining Dr. Adewumi's treatment. She performed an examination but it is unclear whether she reached a conclusion as to the cause of his injury; yet she affirmed the work restrictions from Dr. Adewumi.

Assuming it is indeed his signature on the causation letter, Dr. Woodall appears to have rendered an opinion on causation. However, there is no evidence that Dr. Woodall reviewed his colleagues' notes or any other records of his treatment, and he formulated his opinion very early in the treatment process. Although entitled to a presumption of correctness, the Court places little weight upon the causation opinion he gave in the causation letter.

In contrast, Dr. Adewumi appears to have performed complete examinations on at least five occasions over the course of approximately five months. It seems reasonable that the physicians having greater contact with the Plaintiff would have the advantage and opportunity to provide a more in-depth opinion, if not a more accurate one. *Orman,* at 677. Dr. Adewumi additionally ordered and evaluated the x-rays and presumably reviewed the MRI report. Further, as Mr. Amofa's primary care physician, he possessed greater familiarity with Mr. Amofa's history and had more information available to him when he rendered an opinion. In sum, the Court holds that Dr. Adewumi's opinion on causation rebutted by a preponderance of the evidence the presumption of correctness to

the Premise Health opinion, which, as outlined above, has many deficiencies. Therefore, as a matter of law, Mr. Amofa has come forward with sufficient evidence from which this Court concludes he is likely to prevail at a hearing on the merits regarding the compensability of his claim.

Having so found, the Court next considers Mr. Amofa's entitlement to medical benefits. Mr. Amofa credibly testified that, although Dr. Adewumi returned him to work, he continues experiencing back pain. There is no indication Dr. Adewumi or Dr. Haslam placed him at maximum medical improvement or assessed an impairment rating. The Court holds that, under Tennessee Code Annotated section 50-6-204(a)(1)(A) (2016), Yates must provide him with past and continuing reasonable and necessary medical treatment related to the injury. Given Dr. Adewumi's familiarity with the injury, it is appropriate that he continue providing treatment, and the Court appoints him as the authorized treating physician, subject to any referrals for specialty care he might make.

Finally, with regard to sums Mr. Amofa paid for past medical care, the Appeals Board held, "In circumstances where an employer refuses to provide medical treatment and/or denies the employee's claim, such employer bears the risk of being held responsible for medical expense incurred by the employee in the event the claim is deemed compensable." *Young v. Young Electric,* No. 2015-06-0860, 2016 TN Wrk. Comp. App. Bd. LEXIS 24, at *16 (Tenn. Workers' Comp. App. Bd. May 25, 2016). Here, Mr. Amofa testified that, prior to the denial, Yates directed him to treat with his primary care physician. However, he introduced proof of only the co-pay sums for prescriptions and physical therapy prescribed by Dr. Adewumi relative to the work-related injury. The Court finds these amounts reasonable and necessary and holds that Yates is responsible for their prompt payment, but cannot order payment for any additional past medical care at this time because Mr. Amofa did not satisfy his burden of proving the amounts he paid for this care.

**IT IS, THEREFORE, ORDERED** as follows:

1. Yates or its workers' compensation carrier shall provide Mr. Amofa with medical treatment as required by Tennessee Code Annotated section 50-6-204 (2016) with Dr. Adewumi or any specialty providers to whom he might refer Mr. Amofa. Medical bills shall be furnished to Yates or its workers' compensation carrier by Mr. Amofa or the medical providers.

2. Yates shall promptly pay and/or reimburse Mr. Amofa $30.00 for the co-pays for his prescription medicines as well as the co-pays to Results Physiotherapy in the amount of $467.84.

3. This matter is set for a Scheduling Hearing on March 6, 2017, at 9:15 a.m. You must call 615-532-9552 or toll-free at 866-943-0025 to participate in the Hearing.

You must call in on the scheduled date/time to participate. Failure to call in may result in a determination of the issues without your further participation.

4. Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3) (2016). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov or by calling (615) 253-1471 or (615) 532-1309.

**ENTERED this the 21st day of December, 2016.**

**Judge Kenneth M. Switzer**
**Court of Workers' Compensation Claims**

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board

will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within five business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within five business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

# APPENDIX

Exhibits:
1. Affidavit of Anthony Amofa, October 31, 2016
2. First Report of Injury, February 8, 2016
3. Choice of Physician Form, February 8, 2016
4. Notice of Denial, March 3, 2016
5. Denial letter from carrier to Mr. Amofa, March 3, 2016
6. Wage statement
7. Causation letter, December 9, 2016[6]
9. Medical records of Anthony Amofa
10. Medical bills
11. Employee/Manager Medical Statement, February 8, 2016

Technical record:[7]
1. Petition for Benefit Determination, May 3, 2016
2. Dispute Certification Notice, June 27, 2016
3. Request for Expedited Hearing, October 31, 2016
4. Employer's Notice of Filing, December 8, 2016

---

[6] Yates objected to the admissibility of Pre-marked Exhibit 8, a letter signed by Stephen Johnson, FNP-BC, on the basis that Mr. Johnson is not qualified to render an opinion on causation. The Court sustained the objection.

[7] The Court did not consider attachments to Technical Record filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 21st day of December, 2016.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|------|----------------|---------|-----------|------------------|
| Anthony Amofa, self-represented | X | | X | 3209 Grace Crest Point Nashville TN 37217 ahamofa@gmail.com |
| John Rucker, Employer's attorney | | | X | jrucker@ruckerlaw.com |

Penny Shrum, Clerk of Court
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**

11