**FILED**

**September 16, 2016**

**TN COURT OF
WORKERS' COMPENSATION
CLAIMS**

**Time 10:31 AM**



## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT MURFREESBORO

| | |
|---|---|
| **TONJA BRICENO,** | ) **Docket No.: 2016-05-0386** |
| **Employee,** | ) |
| **v.** | ) **State File No.: 38680-2015** |
| | ) |
| **RESOURCE MFG.,** | ) **Judge Robert Durham** |
| **Employer.** | ) |
| | ) |

---

## EXPEDITED HEARING ORDER GRANTING MEDICAL BENEFITS AND TEMPORARY DISABILITY BENEFITS

---

This cause came before the undersigned Workers' Compensation Judge on August 31, 2016, upon the Request for Expedited Hearing (REH) filed by the employee, Tonja Briceno, on April 22, 2016, pursuant to Tennessee Code Annotated section 50-6-239 (2015). Ms. Briceno filed the Request to determine if the employer, Resource Mfg., is obligated to pay for surgery for her right shoulder, as well as temporary disability benefits from the date Resource terminated them through the present and ongoing, for an alleged work-related injury she sustained on May 8, 2015.

The dispositive issue is whether Ms. Briceno sustained an injury to her right shoulder on May 8, 2015, that primarily arose out of and in the course and scope of her employment with Resource. The Court holds Ms. Briceno provided sufficient evidence to establish she is likely to prevail at a hearing on the merits on that issue.

### History of Claim

Ms. Briceno had been working on the assembly line for Resource, a manufacturer of car parts, for two months when she allegedly sustained a work-related injury on May 8, 2015.[1] Ms. Briceno testified she was removing parts known as "cold packs" from a cooling rack. As she reached to remove the cold packs from the top rack, she felt a "pull"

---

[1] At the hearing, the attorneys stipulated to an average weekly wage of $322.08, which provides a compensation rate of $214.72.

1

in her upper mid-back, beneath her right shoulder blade, but continued working. She testified that she began pulling the filled cart and felt sudden, intense pain in her upper-mid-back and right shoulder blade, extending through her right shoulder and the right side of her neck.

Ms. Briceno immediately reported the incident to her supervisor at Resource who referred her to Fast Pace Urgent Care that day.[2] According to Fast Pace's records, Ms. Briceno complained of severe "constant back pain in the mid-back." (Ex. 3 at 2.) Ms. Briceno also reported "joint pain and muscle pain as abnormal symptoms related to the complaint." *Id.* The record does not specifically mention right shoulder or neck pain. Ms. Briceno was diagnosed with a thoracic spine sprain and muscle spasms. *Id.* At the hearing, Ms. Briceno testified she told the personnel at Fast Pace about the pain in her shoulder and neck.

That day, Ms. Briceno also gave a brief recorded statement, consisting of answers to nine questions, to Maria Martinez, a nurse with Coventry Workers' Comp Services. (Ex. 10.) Ms. Briceno gave an account of the incident, stating that as she stretched to reach the cold packs she felt a "pull," but continued working until she filled her cart and started pulling it, at which time she felt a "pop" in her mid-back. (Ex. 10 at 2.) Ms. Martinez asked her if she had any symptoms other than pain, and she replied that she couldn't stand up straight. *Id.*

Ms. Briceno returned to Fast Pace on May 29, 2015. (Ex. 3 at 5.) The record noted that her chief complaint was pain radiating to her "central mid-back." *Id.* She also complained of "joint pain, muscle pain and tingling as abnormal symptoms related to the complaint." *Id.* On exam, the record notes Ms. Briceno complained of numbness and tingling in her right arm and hand, and exhibited reduced range of motion throughout her right shoulder and upper extremity. *Id.* at 7. The diagnosis continued to be thoracic sprain and muscle spasms. At that point, the provider, Diane Perry, APN, recommended an orthopedic referral. *Id.*

Ms. Briceno returned to Fast Pace on June 2. The note states she was there for joint pain in her right shoulder and further noted, "Patient has been seen in clinic twice for this same issue." *Id.* at 9. Ms. Briceno complained of constant pain in her right shoulder. The record described her history as a thoracic strain and muscle spasms, both described as being "active." *Id.* Nurse Perry again referred Ms. Briceno for an evaluation by an orthopedist. *Id.* at 10.

On June 12, Ms. Briceno saw Dr. Derek Riley for an orthopedic evaluation. (Ex. 4 at 2.) The record notes "Patient states that on 5/8 she injured arm at work, states that she felt a pop under shoulder blade on Rt side, pain now radiating down into hip, unable to

---

[2] Resource did not provide Ms. Briceno with a panel of physicians at the time, but simply directed her to Fast Pace. Ms. Briceno also testified that she never saw a medical doctor at Fast Pace.

2

raise Rt. Arm. States that she can't turn her neck without pain." *Id.* Dr. Riley diagnosed Ms. Briceno with neck and shoulder pain, and referred her for physical therapy and a shoulder MRI. The impression from the MRI report noted tendinopathy in multiple tendons as well as a "focal high-grade articular side tear of the distal supraspinatus tendon, which may have a focal full-thickness component." *Id.* at 6.

Ms. Briceno went to physical therapy on July 1, and the intake sheet noted she had a history of diabetes and arthritis, as well as rheumatoid arthritis. (Ex. 12 at 3.) At the hearing, Ms. Briceno testified the diabetes was gestational diabetes and she had been diagnosed with rheumatoid arthritis in her lower extremities. Dr. Riley discontinued physical therapy after three visits on Ms. Briceno's assertion that it made her symptoms worse. (Ex. 12 at 16.)

Ms. Briceno returned to Dr. Riley on July 13. *Id.* at 10. Dr. Riley diagnosed her with a rotator cuff tear and a bone lesion. He wanted an MRI to obtain further information regarding the bone lesion, but felt her pain was "out of proportion" to a rotator cuff tear two months from the injury. *Id.* The follow-up MRIs showed no abnormalities in the cervical region, and while the doctor interpreting the shoulder MRI observed tendinopathy, he opined there was no evidence of an actual rotator cuff tear. (Ex. 6.) On August 5, Ms. Briceno returned to Dr. Riley still complaining of pain in her right shoulder and claiming she could not grip an object without dropping it. *Id.* at 9. Dr. Riley ordered an EMG, which came back normal. *Id.* at 11.

On August 20, Ms. Briceno returned still complaining of continued pain in her right neck, shoulder, and arm with diminished strength and sensation. *Id.* at 14. Dr. Riley again noted her symptoms were out of proportion to her findings, but recommended a cervical MRI for further evaluation. *Id.* at 15. Dr. Riley saw Ms. Briceno for the last time on September 9. *Id.* at 16. Ms. Briceno claimed she could not lift her right arm or move her ring and small finger. *Id.* Dr. Riley stated that a follow-up MRI on her shoulder was actually negative for a rotator cuff tear. *Id.* He concluded by again noting her symptoms were out of proportion to her physical findings, but recommended a second opinion. *Id.*

Resource authorized Dr. Jeffrey Adams, orthopedist, to treat Ms. Briceno. On October 1, 2015, Dr. Adams noted in his record that Ms. Briceno stated her injury occurred when she reached up to pick up a part and felt a pull in her right shoulder. The record goes on to state that "As she continued reaching up to grab [parts] she felt a pop in the RT posterior shoulder." (Ex. 5 at 1.) Dr. Adams reviewed the MRI of July 28, and contrary to Dr. Riley's opinion, believed it showed a "partial insertional rotator cuff tear" with no degenerative changes. *Id.* at 2. He gave Ms. Briceno a cortisone injection as well as a trigger point injection. *Id.* at 3. He indicated she could return to light duty with no work at or above shoulder level. *Id.* Dr. Adams saw Ms. Briceno again on November 2, 2015. *Id.* at 7. Ms. Briceno claimed only minimal, temporary improvement with the injections. *Id.* As a result, Dr. Adams recommended surgery and restricted her from

3

work until after surgery. *Id.* at 11.

On March 16, 2016, Resource's counsel wrote a letter to Dr. Adams asking for his opinion regarding the cause of Ms. Briceno's need for shoulder surgery. (Ex. 11 at 42.) The letter set out Resource's account of Ms. Briceno's alleged injury, her recorded statement, and Fast Pace's records. The letter pointedly states that immediately following her injury, Ms. Briceno complained of pain in her "mid to low back area" and "specifically denied any additional complaints." *Id.*

Following Resource's summary of events, the letter asked Dr. Adams to answer several questions regarding Ms. Briceno's claim. In his responses, Dr. Adams indicated he saw no significant difference between the shoulder MRIs taken on July 9, 2015, and July 28, 2015. In the next question, Dr. Adams was asked to assume that Ms. Briceno only told Resource and her initial health providers that she injured her low to mid-back and specifically denied any other symptoms. Dr. Adams agreed that if this were true, the history would be inconsistent with the one given him. *Id.* at 43. He was then asked to assume that Ms. Briceno did not mention any right shoulder and arm complaints until one month after the injury. Dr. Adams again agreed that if this were true, it did not appear her shoulder and arm complaints arose primarily from the work event on May 8, 2015. *Id.* Based on these responses, Resource denied Ms. Briceno's claim on March 28, 2016, and stopped paying any benefits. (Ex. 14.)

However, on March 26, 2016, Ms. Briceno's counsel also wrote to Dr. Adams, asking him to assume that the history Ms. Briceno gave him was accurate and requesting his opinion regarding causation. (Ex. 13.) In response, Dr. Adams opined that Ms. Briceno's shoulder injury arose primarily out of and in the course of her employment, and she required surgery to correct the problem. *Id.*

Given these contrary opinions, the parties took Dr. Adams' deposition on July 5, 2016. (Ex. 11.) On direct examination, Dr. Adams confirmed that the recorded statement and the initial Fast Pace records do not refer to shoulder pain, which is inconsistent with her history to him. *Id.* at 12. Furthermore, although the mechanism of injury Ms. Briceno described–i.e., reaching up for the part–is a "very common" way for people to incur a rotator cuff tear, it would be "very unusual" for someone to feel a pop in her mid-back and the injury actually be to her shoulder. *Id.* Therefore, based on this history, he could not say to a reasonable degree of medical certainty that Ms. Briceno's shoulder injury primarily arose out of the work injury on May 8, 2015. *Id.*

However, on cross-examination, Dr. Adams acknowledged that if the facts he was asked to assume on direct examination were inaccurate, his opinion regarding causation could change. *Id.* at 14. He agreed that when he first saw Ms. Briceno, she complained of pain in her posterior shoulder, which would be around her shoulder blade in the "thoracic area." *Id.* at 15. Dr. Adams reiterated that reaching overhead is a "good

4

mechanism" for tearing a rotator cuff, and if Ms. Briceno's history to him were accurate, it would be a "slam-dunk/no questions asked" kind of case. *Id.* He further testified that he had no reason to doubt Ms. Briceno's credibility, although she did complain of more pain than most of his patients with rotator cuff tears. *Id.* at 24. However, her exam was "very consistent" with a rotator cuff tear. *Id.* Dr. Adams went on to opine that if it were determined that Ms. Briceno did have shoulder pain at the time of her work injury on May 8, he would have "no problems" relating her rotator cuff tear to the May 8, 2015 work event. *Id.* at 25. Dr. Adams further testified that Ms. Briceno should remain off work until she has recovered from surgery. *Id.* at 27.

On redirect, Dr. Adams acknowledged that an inability to stand up straight, as described by Ms. Briceno in her recorded statement, is more consistent with a back injury than a shoulder injury. *Id.* at 28. He described the pain typically experienced by people with rotator cuff injuries is in the lateral aspect of the arm, midway between the top of the shoulder and the elbow. *Id.* at 29. Furthermore, there is usually pain within a few days following a rotator cuff tear. *Id.*

At the hearing, Ms. Briceno testified she consistently informed her health care providers that the pain was in her upper mid-back around her shoulder blade and went through her right shoulder and down her right arm. She testified that at the outset, the pain was primarily in her upper mid-back, but was later more concentrated in her right shoulder and down her right arm. She further affirmed she had never experienced any problems with her right shoulder before May 8, 2015, was able to do her job without limitations prior to that date, and did not sustain any injury to her shoulder subsequent to May 8. She conceded she did have low back pain a few months before the May 8 incident, but the pain had been limited to her low back, and she had fully recovered by the time of the accident. Finally, she testified she has not received any income since Resource terminated her benefits on March 26, 2016.

Ms. Briceno's cousin, Ashley Chandler, also testified at the hearing. Ms. Chandler stated that when she took Ms. Briceno to her appointment at Fast Pace, she was complaining of right shoulder pain. She also testified that she had not heard Ms. Briceno complain of right shoulder pain prior to the May 8, 2015 incident.

At the hearing, Ms. Briceno contended that the rotator cuff tear to her right shoulder primarily arose out of and in the course and scope of her employment with Resource, thus entitling her to workers' compensation benefits. Resource countered that Ms. Briceno did not complain of shoulder pain initially following the May 8, 2015 work event, and thus has failed to establish that any injury to her right shoulder is causally related to her employment at Resource.

5

## Findings of Fact and Conclusions of Law

The Court considers the following legal principles in reaching its conclusions in this matter. The Court must interpret the Workers' Compensation Law fairly, impartially and in accordance with basic principles of statutory construction favoring neither the employee nor employer. Tenn. Code Ann. § 50-6-116 (2015). Ms. Briceno has the burden of proof on all essential elements of her workers' compensation claim. *Scott v. Integrity Staffing Solutions,* No. 2015-01-0055, 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Tenn. Workers' Comp. App. Bd. Aug. 18, 2015).

Ms. Briceno need not prove every element of her claim by a preponderance of the evidence in order to obtain relief at an expedited hearing. *McCord v. Advantage Human Resourcing,* No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). At an expedited hearing, Ms. Briceno has the burden to come forward with sufficient evidence from which the trial court can determine she is likely to prevail at a hearing on the merits. *Id.* This lesser evidentiary standard "does not relieve an employee of the burden of producing evidence of an injury by accident that arose primarily out of and in the course and scope of employment at an expedited hearing, but allows some relief to be granted if that evidence does not rise to the level of a 'preponderance of the evidence.'" *Buchanan v. Carlex Glass Co.,* No. 2015-01-0012, 2015 TN Wrk. Comp. App. Bd. LEXIS 39, at *6 (Tenn. Workers' Comp. App. Bd. Sept. 29, 2015).

In order to prevail, Ms. Briceno must establish she suffered an accidental injury that was "caused by a specific incident, or set of incidents, arising primarily out of and in the course and scope of employment, and is identifiable by time and place of occurrence." Tenn. Code Ann. § 50-6-102(14)(A) (2015). However, in order to establish she sustained a compensable injury, Ms. Briceno must establish to a "reasonable degree of medical certainty" that in the "opinion of the physician" her condition arose primarily out of and in the course and scope of her employment. *See* Tenn. Code Ann. § 50-6-102(13) (2015). Thus, lay testimony must generally be corroborated by expert medical testimony in order to meet the burden of proof regarding causation. *See Scott, supra,* at *12.

In this matter, Dr. Riley, the first specialist authorized to treat Ms. Briceno, originally noted a rotator cuff tear, but later indicated that a second MRI failed to reveal an actual tear. (Ex. 4 at 16.) Nevertheless, he recommended Ms. Briceno be seen for a second opinion. *Id.* As a result, Resource authorized Dr. Adams to treat Ms. Briceno. (Ex. 11 at 5.) After examining Ms. Briceno and reviewing the MRI films, Dr. Adams opined Ms. Briceno suffered from a partial rotator cuff tear in her right shoulder. (Ex. 5 at 2.) He eventually recommended surgery to repair the tear. *Id.* at 11. Dr. Adams also testified under oath that, in his opinion, Ms. Briceno suffers from a partial rotator cuff tear that requires surgery. (Ex. 11 at 22.)

6

It is generally within a trial court's discretion to choose which expert to accredit when there is a conflict of expert opinions. *Kellerman v. Food Lion, Inc.,* 929 S.W.2d 333, 334 (Tenn. 1996); *Johnson v. Midwesco, Inc.,* 801 S.W.2d 804, 806 (Tenn. 1990). In this instance, Dr. Adams gave sworn testimony clearly affirming his opinion that Ms. Briceno suffers from a rotator cuff tear that requires surgery, and was the only doctor to provide sworn testimony. The Court is persuaded by Dr. Adams' testimony, and holds Ms. Briceno has provided sufficient evidence to establish she is likely to prevail at trial as to whether she currently suffers from a rotator cuff tear in her right shoulder.

However, Ms. Briceno must also establish her rotator cuff tear is causally related to her employment with Resource before it is compensable under Workers' Compensation Law. *See* Tenn. Code Ann. § 50-6-102(13) (2015). In this instance, Dr. Adams opined that if the history she gave him, as well as the history she gave to the Court through her testimony, is correct, it is a "slam-dunk/no questions asked" issue with regard to causation. (Ex. 11 at 15.) Thus, the matter boils down to whether the Court believes Ms. Briceno's testimony that, in addition to pain in her mid-back, she also had pain in her right shoulder following her work incident of May 8, 2015. The Court finds there is sufficient reason to believe Ms. Briceno, and thus holds that she is likely to prevail at trial as to whether her rotator cuff injury primarily arose out of and in the course of her work-related injury on May 8, 2015.

Resource's primary argument against causation is that Ms. Briceno only complained of mid-back pain, not shoulder pain, in her recorded statement and to Fast Pace on the day of the incident. However, neither record indicates Ms. Briceno "denied" any other complaints, as stated by Resource in its letter to Dr. Adams. In the recorded statement, which only consisted of nine brief questions, Ms. Briceno stated she "felt a pop" in her mid-back. (Ex. 10 at 3.) She was then asked if there were any symptoms *"other than pain."* *Id.* (Emphasis added.) Ms. Briceno replied that she could not stand up straight. *Id.* As can be seen, the interviewer did not even ask Ms. Briceno where she suffered pain, much less give her an opportunity to explain she had shoulder pain as well as upper mid-back pain.

Similarly, the initial record from Fast Pace only notes that Ms. Briceno's primary complaint was mid-back pain after feeling a pop in her back. The record does not indicate Ms. Briceno denied other symptoms, and indeed, refers to "joint pain and muscle pain as abnormal symptoms related to the complaint." (Ex. 3 at 2.) Furthermore, as explained by Dr. Adams, pain from a rotator cuff tear often manifests itself after inflammation sets in within a few days of the actual injury. (Ex. 11 at 29.) This is consistent with Ms. Briceno's testimony that initially her pain was concentrated in her upper mid-back, but later moved throughout her right shoulder and arm. Furthermore, the second note from Fast Pace, written before Ms. Briceno was aware of a possible rotator cuff problem, specifically noted complaints of weakness, loss of motion and

7

numbness in her right upper extremity as well as "radiating pain" from her mid-back. *Id.* at 7. Finally, the note from the third visit on June 2 specifically designated Ms. Briceno's issue as "right shoulder," again before Ms. Briceno had undergone any diagnostic tests noting abnormalities in the shoulder. The note also declared, "Patient has been seen in clinic twice for same issue," which would be consistent with Ms. Briceno's assertion that she complained of shoulder pain from the outset. *Id.* at 9.

Dr. Adams opined he had no reason to doubt the credibility of Ms. Briceno, other than perhaps exaggerated complaints. (Ex. 11 at 24.) The Court concurs. Ms. Briceno testified she had never experienced shoulder pain before May 8, 2015, that she could do her job with no problems prior to that time, and that she did not experience any injury to her shoulder subsequent to May 8. Her cousin, Ms. Chambers, corroborated her testimony, and Resource offered no evidence to the contrary.

Therefore, based on the record as a whole, the Court holds Ms. Briceno has established she is likely to prevail at trial as to whether she sustained an injury to her right rotator cuff that causally relates to her work-related accident on May 8, 2015. Resource shall provide Ms. Briceno with reasonable and necessary medical treatment, including surgery, as recommended by her authorized physician, Dr. Adams.

Finally, Dr. Adams testified he took Ms. Briceno off work pending surgery, and she should remain off work until her recovery. (Ex. 11 at 27.) Ms. Briceno testified she has not received any income since Resource terminated her benefits on March 28, 2016. As a result, Ms. Briceno is entitled to temporary total disability benefits from March 29, 2016, through the present, at the agreed compensation rate of $214.72, and until Dr. Adams returns her to work or places her at maximum medical improvement. *See* Tenn. Code Ann. § 50-6-207(1)(A) (2015).

**IT IS, THEREFORE, ORDERED** as follows:

1. Resource shall provide reasonable and necessary medical treatment for Ms. Briceno's work-related injury of May 8, 2015, including rotator cuff surgery, as recommended by her authorized physician, Dr. Adams.

2. Resource shall pay Ms. Briceno temporary total disability benefits from March 29, 2016, through the present, which equates to $5,245.30, and until Dr. Adams returns her to work or places her at maximum medical improvement.

3. This matter is set for Initial Hearing/Status Conference on October 21, 2016, at 1:30 p.m. C.T.

4. **Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days**

from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3) (2015). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to **WCCompliance.Program@tn.gov** no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov or by calling (615) 253-1471 or (615) 532-1309.

ENTERED THIS THE 16TH DAY OF SEPTEMBER, 2016.

Robert V. Durham, Judge
Court of Workers' Compensation Claims

## Initial Hearing/Status Conference:

An Initial Hearing/Status Conference has been set with Judge Robert Durham, Court of Workers' Compensation Claims. You must call 615-253-0010 or toll-free at 866-689-9049 to participate in the Initial Hearing.

Please Note: <u>You must call in on the scheduled date/time to participate.</u> Failure to call in may result in a determination of the issues without your further participation. All conferences are set using Central Time (CT).

## Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten calendar days after the filing of a notice of appeal, payment

must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within five business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within five business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

# APPENDIX

Exhibits:

1. Affidavit of Tonja Briceno
2. Affidavit of Dr. Jeffrey Adams
3. Medical records from Fast Pace Medical Clinic
4. Medical records from Dr. Derek Riley
5. Medical records from Dr. Adams
6. Medical records from Southern Tennessee Regional Health System
7. First Report of Injury
8. Wage Statement
9. Choice of Physician form
10. Ms. Briceno's recorded statement
11. Dr. Adams deposition with attached exhibits
12. Records from Star Physical Therapy
13. Letter from Ms. Briceno's counsel to Dr. Adams with his response
14. Notice of Controversy
15. Notice of Denial

Technical Record:

1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing
4. Agreed Order

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order Granting Benefits was sent to the following recipients by the following methods of service on this the 16th day of September, 2016.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|------|------|------|------|------|
| Michael Fisher | | | X | mfisher@ddzlaw.com |
| Mary Dee Allen | | | X | mallen@wimberlylawson.com |

Penny Shrum, Clerk of Court
Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov