**FILED**

**December 21, 2016**

**TN COURT OF
WORKERS' COMPENSATION
CLAIMS**

**Time: 12:18 PM**



## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT KNOXVILLE

| | | |
|---|---|---|
| **JENNIFER HOLSOPPLE,**<br>Employee, | ) | Docket No.: 2016-03-0620 |
| **v.** | ) | |
| **VOLUNTEER STAFFING, INC.,**<br>Employer. | ) | State File No.: 101048-2015 |
| **and** | ) | |
| **BRIDGEFIELD CASUALTY INS.,**<br>Carrier. | ) | Judge Pamela B. Johnson |
| | ) | |

### EXPEDITED HEARING ORDER
### GRANTING MEDICAL BENEFITS
*(Decision on the Record)*

This matter came before the undersigned Workers' Compensation Judge upon the Request for Expedited Hearing filed by Jennifer Holsopple pursuant to Tennessee Code Annotated section 50-6-239 (2016) on November 9, 2016, seeking a decision on the record, in lieu of convening an evidentiary hearing. Volunteer Staffing, Inc. did not file a Response to the Request for Expedited Hearing. The Court issued a Docketing Notice on November 30, 2016, listing the documents to be considered. This Court gave Ms. Holsopple and Volunteer Staffing until December 9, 2016, to file objections and/or position statements. Volunteer Staffing filed a position statement on December 2, 2016. Ms. Holsopple offered no position statement.

This Court finds it needs no additional information to determine whether Ms. Holsopple is likely to prevail at a hearing on the merits of the claim. Accordingly, pursuant to Tennessee Code Annotated section 50-6-239(d)(2) (2016), Tennessee Compilation Rules and Regulations 0800-02-21-.14(1)(c) (2016), and Rule 7.02 of the Practices and Procedures of the Court of Workers' Compensation Claims (2016), the Court decides this matter upon a review of the written materials.

The central legal issue is whether Ms. Holsopple is likely to prevail at a hearing on the merits on entitlement to additional medical benefits, specifically a left ankle

1

arthroscopy recommended by an authorized treating physician. For the reasons set forth below, the Court holds Ms. Holsopple came forward with sufficient evidence demonstrating she is likely to prevail at a hearing on the merits. Accordingly, this Court concludes Ms. Holsopple is entitled to the requested medical benefits.

## History of Claim

A review of the written materials revealed the following facts. Ms. Holsopple is a thirty-three-year-old resident of Blount County. (Ex. 1.) She worked for Volunteer Staffing as a certified personal care attendant. (Ex. 2D(ii).) Her job description noted the "key responsibilities" were, in part,: "[p]lans and prepares nutritious meals" and "[p]rovides for patient/client shopping needs and completes other out of home errands when instructed to do so by the supervisor." *Id.*; *see also* Ex. 5A.

On December 23, 2015, Ms. Holsopple reported to a client's home and learned the bedridden client needed groceries. (Ex. 5A.) Ms. Holsopple went to a Dollar General store to purchase the client's groceries. *Id.* As she entered the store, the rug slipped forward, causing her to fall and injure her right ankle and left hip. *Id.* She reported the injury immediately to Matt Johnson at Volunteer Staffing and advised him she needed emergent care. *Id.*; *see also* Ex. 2C(i).

Ms. Holsopple went to the emergency room at Blount Memorial Hospital on the day of her fall. On December 28, Ms. Holsopple received treatment from Park Med Urgent Care, where the attending provider referred her to an orthopedic physician. Thereafter, Volunteer Staffing provided Ms. Holsopple a panel of physicians and subsequently authorized treatment with orthopedic physician, Dr. Christine Seaworth.[1, 2] (Ex. 5A.)

Ms. Holsopple saw Dr. Seaworth on January 14, 2016, and reported significant left ankle pain following a fall on the job. (Ex. 2C(vi), p. 76.) Ms. Holsopple also reported swelling, numbness, and weakness in her left ankle. *Id.* She additionally provided a history of left ankle sprains and fracture in the past. *Id.* Dr. Seaworth treated Ms.

---

[1] The file contains three panels of physicians; two of the panels do not contain the date of selection, the physician selected, the date of appointment, or the signatures of Ms. Holsopple and the employer representative. Tennessee Code Annotated section 50-6-204(a)(3)(D)(i) (2016) provides, in part, "The employer shall provide the applicable panel of physicians . . . to the employee in writing . . . and the employee shall select a physician . . . from the panel, sign and date the completed form, and return the form to the employer. The employer shall provide a copy of the *completed* form to the employee and shall maintain a copy of the *completed* form in the records of the employer and shall produce a copy of the *completed* from upon request by the bureau." (Emphasis added.)

[2] One of the incomplete panels included Dr. Christine Seaworth. Tennessee Code Annotated section 50-6-204(a)(3)(D)(ii) states, "In any case when the employee has been presented the physician selection form but has failed to sign the completed form and return it to the employer, the employee's receipt of treatment from any physician provided in the panel after the date the panel was provided shall constitute acceptance of the panel and selection of the physician from whom the employee received treatment as the authorized treating physician, specialist physician, chiropractor, or surgeon."

Holsopple with an "extensive course of nonoperative treatment including rest, activity modification, pain medications, boot immobilization, ankle brace immobilization, physical therapy with home exercises, ice and steroid injection." (Ex. 2C(vi), p. 114.) When Ms. Holsopple's symptoms failed to improve, Dr. Seaworth ordered an MRI of the ankle, which showed "evidence of partial tear of the anterior talofibular ligament that appears to be chronic as well as degenerative arthritis involving the ankle and midfoot." *Id.* at p. 115. On April 18, Dr. Seaworth recommended left "ankle arthroscopy with debridement and modified Brostrom for treatment for the ankle instability." *Id.* at p. 120.

Upon receiving the surgery recommendation, Volunteer Staffing's carrier submitted the requested treatment for Causation Review (CR) and Utilization Review (UR). (Ex. 2C(iv), pp. 8-13.) On April 27, Dr. Robert Holladay, a Tennessee board-certified orthopedic surgeon, issued two reports.

In the CR decision, Dr. Holladay opined, "The requested left ankle arthroscopy with debridement and ligament reconstruction, in my opinion[,] does not have a causal relationship to the 12/23/15 injury. The debridement of the left ankle joint is more likely related to prior left ankle strain/sprains and ankle fracture in the past." *Id.* at p. 9. Dr. Holladay noted further,

> From review of the medical records, Ms. Holsopple has experienced prior left ankle strain/sprain on more than one occasion along with a fractured ankle. The left ankle arthritic changes noted by the left ankle MRI [are] more likely related to the prior injuries to the left ankle. The ongoing chronic complaints of the left ankle particular with weight-bearing is more likely related to the arthritic component of the ankle joint. The ongoing complaints of the left ankle [are] not likely related to a partial tear of the anterior talofibular ligament.

*Id.* at p. 10.

In the UR decision, Dr. Holladay opined, in part,

> There is an imaging study demonstrating only a partial tear of the anterior talofibular ligament. A stress test has not been done. This would support or refute the presence of instability of the ankle. Absent proof of instability, absent a stress x-ray, a left ankle arthroscopy with debridement and ligament reconstruction is not medically indicated at this time.

*Id.* at p. 12. Dr. Holladay stated, "Alternative treatments at this point in time would consist of an ankle brace, a home exercise program and returned to modified employment. Topical use of ice or heat would be also appropriate." *Id.*

3

After receiving Dr. Holladay's reports, Volunteer Staffing denied the recommended ankle surgery on May 2, advising the requested treatment "does not meet criteria for medical necessity of treatment/surgery." (Ex. 5B.)

Dr. Seaworth responded to the carrier's denial, noting, "[Ms. Holsopple] already tried and failed all [the alternative treatments] during her extensive period of nonoperative treatment." (Ex. 2C(vi), p. 114.) Dr. Seaworth also addressed the alternative treatment of modified employment, stating,

> The patient has a job where she has to do heavy lifting with lifting the patients and lifting greater than 50 pounds. Due to her severe pain and limp with ambulation, she is not able to return to her job at this time. There is no modified job description with her. She is unable to do work duty unless she has full duty.

*Id.* With regard to the stress x-ray, Dr. Seaworth indicated she did not take a clinical stress test due to Ms. Holsopple's severe pain and difficulty with clinical exam, but reported Ms. Holsopple had evidence of laxity on exam with anterior drawer with increased talar tilt. *Id.* Dr. Seaworth indicated,

> If the stress x-rays is [sic] the only reason being denied, even though the patient has multiple episodes repeatedly daily of instability in the inversion of her ankle even with bracing, [Dr. Seaworth's office] can happily call [Ms. Holsopple] in if this is what we will get her cleared for surgery.

*Id.* Dr. Seaworth resubmitted the request for left ankle arthroscopy with debridement and possible talus microfracture and lateral ligament stabilization on May 17. *Id.* at pp. 25-29.

Ms. Holsopple and/or Dr. Seaworth appealed Dr. Holladay's UR decision to the Bureau of Workers' Compensation and Medical Director Dr. Robert Snyder on May 20. Following review of the medical records, Dr. Snyder overturned the UR denial and indicated, "The left ankle arthroscopy, possible micro fracture and lateral ligament stabilization procedure as ordered by Dr. Seaworth shall be approved and scheduled." (Ex. 5C.) Dr. Snyder issued an Order for Medical Benefits upon Review by the Medical Director on June 7. *Id.*

Volunteer Staffing filed a Petition for Benefit Determination (PBD) on June 15, 2016, seeking relief from the Utilization Review determination and Order for Medical Benefits issued by the Medical Director "due to ongoing issues of causation that require further investigation." (Ex. 1.) The parties did not resolve the disputed issues through mediation, so the Mediator issued a Dispute Certification Notice (DCN) on July 22, 2016. (Ex. 2.) Following a Show Cause Hearing, Ms. Holsopple filed this Request for

4

Expedited Hearing (REH) seeking a decision on the record, in lieu of convening an evidentiary hearing.

In support of her REH, Ms. Holsopple submitted two additional reports from Dr. Seaworth. (Exs. 5D and 5E.) By letter dated June 23, Dr. Seaworth once again outlined Ms. Holsopple's history, complaints, and extensive nonoperative treatment. (Ex. 5D.) Dr. Seaworth discussed the findings of the MRI. Dr. Seaworth stated,

> Because [Ms. Holsopple] has had continued episodes of instability with her ankle twisting underneath her and giving out and her falling, she has not been able to return to work and she has chronic instability of her ankle. She constantly has to wear an ankle brace and her ankle still gives out on her despite this bracing. Since she had tried and failed all conservative measures, we discussed surgical intervention with ankle arthroscopy with debridement and lateral ligament repair versus reconstructions. I do think this is medically necessary as she is unstable and has multiple falls to prevent further injury and to allow her to return to work.

*Id.*

In response to a questionnaire submitted by Volunteer Staffing's carrier, Dr. Seaworth stated,

> [Ms. Holsopple] reported previous injuries at time of initial evaluation. She reported to me new symptoms of multiple episodes of ankle instability with the new injury not present before. Surgery was for treatment of the new instability after this injury, it was not for treatment of her chronic arthritis or old ankle sprains from which she had recovered from.

(Ex. 5E.) Dr. Seaworth denied that the need for surgery was fifty percent related to the pre-existing issues, stating, "[Ms. Holsopple] did not have multiple episodes of instability prior to this injury. She had injured ankle prior which had been treated successfully [with] conservative care." *Id.* Dr. Seaworth asserted, "The surgery was for ankle stabilization to prevent falls and multiple, continued ankle sprains. Not for treatment of her ankle arthritis. The surgery may help slightly with her pain from arthritis but was not the purpose."

Dr. Seaworth ultimately performed the recommended left ankle arthroscopy in June 2016 and billed Ms. Holsopple's private health insurance. (Ex. 5A.) Post-operatively, Ms. Holsopple received physical therapy. *Id.*

Through her REH, Ms. Holsopple seeks the payment of her medical expenses and ongoing medical benefits allowed by the Workers' Compensation Law in addition to

5

appropriate penalties. Volunteer Staffing opposes the REH on grounds the surgery was unauthorized and not causally related to the work injury.

## Findings of Fact and Conclusions of Law

The following legal principles govern this case. Because this case is in a posture of an Expedited Hearing, Ms. Holsopple need not prove every element of her claim by a preponderance of the evidence in order to obtain relief. *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). Instead, she must come forward with sufficient evidence from which this Court might determine she is likely to prevail at a hearing on the merits. *Id.*; Tenn. Code Ann. § 50-6-239(d)(1) (2016).

Tennessee Code Annotated section 50-6-204(a)(1)(A) (2016) provides that "[t]he employer or the employer's agent shall furnish, free of charge to the employee, such medical and surgical treatment . . . made reasonably necessary by accident as defined in this chapter." Furthermore, a work-related injury "causes . . . the need for medical treatment only if it has been shown to a reasonable degree of medical certainty that it contributed more than fifty percent (50%) in causing the . . . need for medical treatment." Tenn. Code Ann. § 50-6-102(14)(C) (2016). "'Shown to a reasonable degree of medical certainty' means that, in the opinion of the physician, it is more likely than not considering all causes, as opposed to speculation or possibility." Tenn. Code Ann. § 50-6-102(14)(D) (2016).

Tennessee Code Annotated section 50-6-204(b)(1) (2016) provides that "[w]here the nature of the injury . . . is such that it does not disable the employee but reasonably requires medical [or] surgical . . . treatment or care, medicine [or] surgery . . . shall be furnished by the employer." Section 50-6-102(14)(E) (2016) provides, "The opinion of the treating physician, selected by the employee from the employer's designated panel of physicians pursuant to § 50-6-204(a)(3), shall be presumed correct on the issue of causation but this presumption shall be rebuttable by a preponderance of the evidence. Moreover, "treatment recommended by a physician . . . selected pursuant to [§ 50-6-204(a)(3)] or by referral, if applicable, shall be presumed to be medically necessary for treatment of the injured employee." Tenn. Code Ann. § 50-6-204(a)(3)(H) (2016); *see also Morgan v. Macy's*, No. 2016-08-0270, 2016 TN Wrk. Comp. App. Bd. LEXIS 39, at *17 (Tenn. Workers' Comp. App. Bd. Aug. 31, 2016).

Here, the sole issue is the causal relationship and medical necessity of the recommended left ankle arthroscopy with debridement and possible micro fracture and lateral ligament stabilization procedure, recommended by the authorized treating physician. Thus, at the Expedited Hearing stage, where the issue concerns unauthorized medical treatment, Ms. Holsopple has the burden of presenting sufficient evidence to show she is likely to prevail at trial in establishing that the recommended treatment was

6

causally-related to her work injury and reasonably required as a result of the work injury. *See* Tenn. Code Ann. § 50-6-204(b)(1); *see also Coolidge v. City Winery Nashville, LLC, et al.*, No. 2015-06-1333, 2016 TN Wrk. Comp. App. Bd. LEXIS 46, at \*16-17 (Tenn. Workers' Comp. App. Bd. Sept. 23, 2016).

This Court is presented with competing medical opinions on the issues of causal relationship and medical necessity of the recommended surgery. On the issue of causal relationship to the work injury, the records review expert Dr. Holladay addressed causation and opined, "The requested left ankle arthroscopy with debridement and ligament reconstruction, in my opinion[,] does not have a causal relationship to the 12/23/15 injury. The debridement of the left ankle joint is more likely related to prior left ankle strain/sprains and ankle fracture in the past." Dr. Holladay noted further,

> From review of the medical records, Ms. Holsopple has experienced prior left ankle strain/sprain on more than one occasion along with a fractured ankle. The left ankle arthritic changes noted by the left ankle MRI [are] more likely related to the prior injuries to the left ankle. The ongoing chronic complaints of the left ankle particular with weight-bearing is more likely related to the arthritic component of the ankle joint. The ongoing complaints of the left ankle [are] not likely related to a partial tear of the anterior talofibular ligament.

In contrast, the authorized treating physician, Dr. Seaworth, opined, in part, "Surgery was for treatment of the new instability after this injury, it was not for treatment of her chronic arthritis or old ankle sprains from which she had recovered from." Dr. Seaworth denied that the need for surgery was fifty percent related to the pre-existing issues, stating, "[Ms. Holsopple] did not have multiple episodes of instability prior to this injury. She had injured ankle prior which had been treated successfully [with] conservative care." Dr. Seaworth asserted, "The surgery was for ankle stabilization to prevent falls and multiple, continued ankle sprains. Not for treatment of her ankle arthritis. The surgery may help slightly with her pain from arthritis but was not the purpose."

Turning to the issue of medical necessity, Dr. Holladay opined, in part, "Absent proof of instability, absent a stress x-ray, a left ankle arthroscopy with debridement and ligament reconstruction is not medically indicated at this time." Dr. Holladay further stated, "Alternative treatments at this point in time would consist of an ankle brace, a home exercise program and returned to modified employment. Topical use of ice or heat would be also appropriate." *Id.*

Dr. Seaworth responded to Dr. Holladay's report and opined, "[Ms. Holsopple] already tried and failed all [the alternative treatments] during her extensive period of nonoperative treatment." With regard to the stress x-ray, Dr. Seaworth indicated she did

not take a clinical stress test due to Ms. Holsopple's severe pain and difficulty with clinical exam, but reported Ms. Holsopple had evidence of laxity on exam with anterior drawer with increased talar tilt. Dr. Seaworth opined,

> Since she had tried and failed all conservative measures, we discussed surgical intervention with ankle arthroscopy with debridement and lateral ligament repair versus reconstructions. I do think this is medically necessary as she is unstable and has multiple falls to prevent further injury and to allow her to return to work.

When weighing expert medical proof, this Court has the discretion to determine which testimony to accept when presented with conflicting expert opinions. *See Kellerman v. Food Lion, Inc.*, 929 S.W.2d 333, 335 (Tenn. Workers' Comp. Panel Sept. 5, 1996); *Johnson v. Midwesco, Inc.*, 801 S.W.2d 804, 806 (Tenn. 1990). Further, when there is conflicting medical testimony, "the trial judge must obviously choose which view to believe. In doing so, [the trial judge] is allowed, among other things, to consider the qualifications of the experts, the circumstances of their examination, the information available to them, and the evaluation of the importance of that information by other experts." *Orman v. Williams Sonoma, Inc.*, 803 S.W.2d 672, 676 (Tenn. 1991).

Here, the first factor – qualifications of the experts – weighs equally in favor of either physician as both physicians are orthopedic physicians. The second factor – the circumstances of their examination – favors Dr. Seaworth, who personally examined Ms. Holsopple on multiple occasions over the course of several months. The third factor – the information available to them – is also favorable to Dr. Seaworth who had the opportunity to: personally observe and Ms. Holsopple and assess her credibility, physically exam Ms. Holsopple and make objective findings, order and review films from various diagnostic testing, and obtain historical information not readily available in the medical records. The final factor – the evaluation of the importance of that information by other experts – also weighs in favor of Dr. Seaworth, as she discussed at length the nonoperative effort to treat Ms. Holsopple before recommending surgery and the failure of the conservative measures leading to the recommendation. This Court is persuaded by Dr. Seaworth. Accordingly, this Court concludes that Dr. Holladay's opinion failed to rebut the presumption of correctness afforded Dr. Seaworth, the authorized treating physician, on the issue of causation and medically necessity.

Based upon a review of the written materials, this Court concludes Ms. Holsopple came forward with sufficient evidence that she is likely to prevail at a hearing on the merits that the December 23, 2015 work injury caused and medically necessitated the need for the recommended surgery.

On the issue of entitled to payment for the recommended surgery, it is well-settled that where an employer refuses to provide medical treatment and/or denies the

8

employee's claim, the employer bears the risk of being held responsible for medical expenses incurred by the employee in the event the claim is deemed compensable. *See, e.g., GAF Bldg. Materials v. George*, 47 S.W.3d 430, 433 (Tenn. Workers' Comp. Panel 2001); *McCord*, at *13 ("[A]n employer who elects to deny a claim runs the risk that it will be held responsible for medical benefits obtained from a medical provider of the employee's choice[.]"). Volunteer Staffing refused to authorize the recommended surgery, which this Court has now deemed causally related and medically necessitated by the work injury. As such, this Court concludes that Volunteer Staffing shall be responsible for Ms. Holsopple's medical expenses incurred for the recommended surgery. Additionally, Volunteer Staffing shall continue to provide Ms. Holsopple with medical benefits in accordance with Tennessee Code Annotated section 50-6-204 (2016), and Dr. Seaworth shall remain the authorized treating physician.

**IT IS, THEREFORE, ORDERED** as follows:

1. Volunteer Staffing shall provide Ms. Holsopple with medical treatment for her injuries as required by Tennessee Code Annotated section 50-6-204 (2016), to include reimbursement of her private health insurance for the recommended surgery performed by Dr. Seaworth. Medical bills shall be furnished to Volunteer Staffing or its workers' compensation carrier by Ms. Holsopple or the medical providers. Dr. Seaworth shall remain the authorized treating physician.

2. This matter is set for a Scheduling Hearing on **February 16, 2017**, at **10:00 a.m. Eastern Time**. The parties must call 865-594-0091 or 855-543-5041 toll-free to participate in the Scheduling Hearing. Failure to appear by telephone may result in a determination of the issues without your further participation.

3. Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3) (2016). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.

4. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit by email at WCCompliance.Program@tn.gov or by telephone at (615) 253-1471 or (615) 532-1309.

**ENTERED this the 21st day of December, 2016.**

**HON. PAMELA B. JOHNSON**
**Workers' Compensation Judge**

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a filing fee in the amount of $75.00. Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within five business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within five business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

# APPENDIX

The Court reviewed the entire case file in reaching its decision. Specifically, the Court reviewed the following documents, marked as exhibits for ease of reference:

1. Petition for Benefit Determination, filed by Employer on June 15, 2016;
2. Dispute Certification Notice, filed July 22, 2016, with the following attachments:
   A. Email from Attorney Alex B. Morrison, dated June 18, 2016,
   B. Employer's Position Statement, dated June 30, 2016,
      i. Exhibit 1 – Causation Review, dated April 27, 2016,
      ii. Exhibit 2 - Order for Medical Benefits upon Review of the Medical Director, dated June 7, 2016, and
      iii. Exhibit 3 – Letter to Dr. Seaworth, dated June 6, 2016;
   C. Table of Contents of Exhibits:
      i. First Report of Work Injury, page 1,
      ii. Notice of First Payment of Compensation, page 2,
      iii. Notice of Controversy, page 3,
      iv. Utilization Review Denial, pages 4-18,
      v. Panel of Physicians, pages 19-24, and
      vi. Medical Records, pages 25-281;[3]
   D. Letter from Attorney Alex B. Morrison, dated July 12, 2016, with attachments:
      i. Wage Statement, and
      ii. Job Description;
   E. Notice of Appearance by Attorney Jonathan W. Doolan;
3. Show Cause Order, entered October 19, 2016;
4. Order, entered November 3, 2016;
5. Request for Expedited Hearing, filed November 9, 2016, with attachments:
   A. Affidavit of Jennifer Holsopple,
   B. Exhibit 1 – Summit Letter to Dr. Seaworth, dated May 2, 2016,
   C. Exhibit 2 – Letter from Dr. Robert B. Snyder and Order for Medical Benefits upon Review by the Medical Director,
   D. Exhibit 3 – Letter from Dr. Seaworth, dated June 23, 2016, and
   E. Exhibit 4 – Handwritten Response from Dr. Seaworth, signed July 27, 2016;
6. Docketing Notice for On-The-Record Determination, entered November 30, 2016; and

---

[3] The parties submitted voluminous medical records containing multiple copies of the same date of service and/or procedure within Exhibit 2C(vi). The Court considered only the following medical records contained in Exhibit 2C(vi): pp. 25-30, 35-37, 44-46, 50-53, 56-69, 76-80, 86-87, 94-101, 106-108, 114-125, 127, 133, 137-143, 148-149, 171-177, for a total of 78 pages out of the 256 pages submitted with Exhibit 2C(vi).

7. Employer's Position Statement for On-The-Record Expedited Hearing Determination, filed December 2, 2016, with the following attachments:

A. Exhibit 1 – Letter to Dr. Seaworth, dated May 2, 2016 (*Duplicate submission*, previously submitted and contained in Exhibit 2C(iv), p. 4-5),

B. Exhibit 2 - Causation Review, dated April 27, 2016 (*Duplicate submission*, previously submitted and contained in Exhibit 2B(i)),

C. Exhibit 3 - Order for Medical Benefits upon Review of the Medical Director, dated June 7, 2016 (*Duplicate submission*, previously submitted and contained in Exhibit 2B(ii));

D. Exhibit 4 - Affidavit of Jennifer Holsopple (*Duplicate submission*, previously submitted and contained in Exhibit 5A); and

E. Exhibit 5 - Handwritten Response from Dr. Seaworth, signed July 27, 2016 (*Duplicate submission*, previously submitted and contained in Exhibit 5E).

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 21st day of December, 2016.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|---|---|---|---|---|
| Jonathan Doolan, Employee's Attorney | | | X | jonathan@collinsdoolan.com |
| Alex B. Morrison, Tiffany Sherrill, Employer's Attorneys | | | X | ABMorrison@mijs.com TSherrill@mijs.com |

PENNY SHRUM, Court Clerk
WC.CourtClerk@tn.gov