FILED

**February 8, 2017**

IN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time 8:22 AM



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT KNOXVILLE

| | | |
|---|---|---|
| RANDY SUISSE, | ) | Docket No.: 2016-03-0571 |
|       Employee, | ) | |
| v. | ) | |
| BEVCO PARKING SERVICES, INC., | ) | State File No.: 91756-2015 |
|       Employer, | ) | |
| And | ) | |
| BRIDGEFIELD CASUALTY INS. | ) | Judge Lisa A. Lowe |
| CO., | ) | |
|       Carrier. | ) | |
| | ) | |

## EXPEDITED HEARING ORDERGRANTING IN PART MEDICAL AND TEMPORARY PARTIAL DISABILITY BENEFITS

This matter came before the undersigned Workers' Compensation Judge on Randy Suisse's Request for Expedited Hearing on January 25, 2017. The central legal issue is whether Mr. Suisse is likely to prevail at a hearing on the merits that he sustained an injury arising primarily out of and in the course and scope of his employment with Bevco Parking Services, Inc., and if so, whether he is entitled to temporary disability and past and ongoing medical benefits. For the reasons set forth below, the Court holds Mr. Suisse came forward with sufficient evidence demonstrating he is likely to prevail at a hearing on the merits that he is entitled to a panel of orthopedic physicians and twelve weeks of temporary partial disability benefits.

### History of Claim

The parties established the following facts. Mr. Suisse, a fifty-three-year-old resident of Blount County, Tennessee, worked for Bevco as an asphalt foreman. He suffered from chronic, pre-existing mid- and lower-back conditions, which necessitated medical and chiropractic care, long-term pain management with prescribed opioid narcotics, and surgical implantation of a spinal cord stimulator. On November 13, 2015, Mr. Suisse felt a pop in his lower back when he shoveled asphalt from the ground into a paving machine. He worked the remainder of his shift. After he returned to Bevco's

1

facilities at the end of his shift, Tonya Merriman, a manager of Bevco, advised Mr. Suisse that he would be laid off due to "lack of work." Later that evening, Mr. Suisse sent a text message to Ms. Merriman and reported his injury and his attempts to obtain treatment at East Tennessee Medical Group. The following Monday, Mr. Suisse returned to Bevco to discuss medical treatment with Ms. Merriman, and she told Mr. Suisse it was "ok" for him to go to ETMG.

Mr. Suisse treated at ETMG on November 16. He reported a work-related mid-back injury. ETMG diagnosed him with a strain and assigned restrictions of no lifting over five pounds, no pushing or pulling, and no twisting. On November 23, ETMG referred Mr. Suisse to an orthopedic. Bevco did not provide a panel of orthopedists. Mr. Suisse sought unauthorized care with his chiropractor, Dr. Walter Pluznyk, whom he treated for his pre-existing back condition and with whom he continued to treat following this injury. Dr. Pluznyk reviewed pre- and post-injury diagnostic testing and indicated Mr. Suisse sustained an anatomical change at the T-11 vertebrae. Dr. Pluznyk concluded, within a reasonable degree of medical certainty, that Mr. Suisse's work injury caused him to suffer a severe strain/sprain with associated neuritis and T-11 compression fracture. Dr. Pluznyk placed Mr. Suisse off work from November 17, 2015, to the present due to the work injuries.

Approximately one year following the work injury, Bevco sent Mr. Suisse to Dr. Patrick Bolt, an orthopedic physician, for an employer's examination. Dr. Bolt provided his diagnosis, stating, "The mechanism of injury, the imaging findings, and the patient's examination are consistent with a thoracic sprain/strain injury in November 2015, clouded by an aggravation of the patient's significant pre-existing spine pain." Dr. Bolt further stated, "I think it [is] more likely than not that the patient's current symptoms are greater than 50% due to his pre-existing conditions (thoracic and lumbar spondylosis, chronic T11 compression fracture, malfunctioning spinal cord stimulator in the thoracolumbar region) rather than a sprain/strain injury sustained in November 2015." Dr. Bolt also indicated Mr. Suisse had reached maximum medical improvement and retained a two-percent impairment to the body as a whole. Dr. Bolt did not recommend permanent restrictions or additional treatment. In an addendum, Dr. Bolt noted if he had seen the patient immediately following the injury, he would have assigned restrictions and placed Mr. Suisse at maximum medical improvement twelve weeks after the injury date.

At the hearing, Mr. Suisse asserted he suffered a mid-back injury arising primarily out of and in the course and scope of his employment with Bevco. While he acknowledged some pre-existing low-back problems for which he sought treatment for many years, he indicated he was capable of working and performed all of his job duties. He argued the medical proof demonstrated he sustained a compensable acute thoracic strain/sprain and T-11 compression fracture as well as a compensable aggravation of a pre-existing degenerative joint condition. He averred he is entitled to temporary

2

disability benefits, payment for past treatment with ETMG, and payment of past and ongoing medical treatment with Dr. Pluznyk.

Bevco countered that Mr. Suisse did not sustain any new injury but rather filed a retaliatory claim following his permanent lay off. In the alternative, Bevco asserted Mr. Suisse sustained, at most, a non-permanent sprain/strain-type injury. It further asserted Mr. Suisse's unauthorized medical care was not related to a compensable work injury and/or reasonable and necessary. Bevco referenced Mr. Suisse's prior treatment for his pre-existing back condition with Chilhowee Pain Center. Specifically, on August 13, Mr. Suisse reported to CPC that work was becoming too much for his back pain and he discussed the potential for filing for disability. Bevco denied Mr. Suisse's entitlement to either temporary disability or medical benefits.

## Findings of Fact and Conclusions of Law

The following legal principles govern this case. Because this case is in a posture of an Expedited Hearing, Mr. Suisse need not prove every element of his claim by a preponderance of the evidence in order to obtain relief. *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015). Instead, he must come forward with sufficient evidence from which this Court might determine he is likely to prevail at a hearing on the merits. *Id.*; Tenn. Code Ann. § 50-6-239(d)(1) (2016).

With the above principles in mind, an injury must arise primarily out of and occur in the course and scope of the employment to be compensable under the Workers' Compensation Law. *See* Tenn. Code Ann. § 50-6-102(14) (2016). The term "injury" is defined as "an injury by accident . . . arising primarily out of and in the course and scope of employment, that causes . . .the need for medical treatment of the employee." *Id.* For an injury to be accidental, it must be "caused by a specific incident, or set of incidents . . . and is identifiable by time and place of occurrence." Tenn. Code Ann. § 50-6-102(14)(A) (2016).

In the present case, Mr. Suisse identified a specific incident, or set of incidents, identifiable by time and place that occurred while he performed his job duties at Bevco. The issue turns to whether Mr. Suisse's injury arose primarily out of and in the course and scope of employment. Here, both Dr. Pluznyk and Dr. Bolt concluded Mr. Suisse sustained a thoracic sprain/strain that arose primarily out of and in the course of his employment. Thus, the issue becomes whether Mr. Suisse sustained additional injuries and/or a compensable aggravation of his pre-existing condition.

Conflicting medical opinions must be weighed in accordance with legal precedent. When weighing expert medical proof, this Court has the discretion to determine which testimony to accept when presented with conflicting expert opinions. *See Kellerman v.*

*Food Lion, Inc.*, 929 S.W.2d 333, 335 (Tenn. Workers' Comp. Panel Sept. 5, 1996); *Johnson v. Midwesco, Inc.*, 801 S.W.2d 804, 806 (Tenn. 1990). Further, when there is conflicting medical testimony, "the trial judge must obviously choose which view to believe. In doing so, [the trial judge] is allowed, among other things, to consider the qualifications of the experts, the circumstances of their examination, the information available to them, and the evaluation of the importance of that information by other experts." *Orman v. Williams Sonoma, Inc.*, 803 S.W.2d 672, 676 (Tenn. 1991). The Court applies these principles below.

Dr. Pluznyk is Mr. Suisse's chiropractor. Dr. Pluznyk first said, "It is my opinion that [Mr. Suisse] sustained a strain/sprain injury that was caused by his injury on the job of November 13, 2015 . . . It is also my opinion that Mr. Suisse could have suffered a herniated disc from the injury on the job[.]" Later, Dr. Pluznyk stated:

> I have compared Mr. Suisse's CT scan with his prior diagnostic testing and have determined that [he] has sustained an anatomical change of the T-11 vertebrae as a compression fracture. It is my opinion that based on a reasonable degree of medical certainty that Mr. Suisse's diagnosed injuries and resulting care and testing along with his being disabled from work are related to his on-the-job injury of November 13, 2015. The injury arose primarily out of and in the course and scope of his employment. The employment contributed to more than 50% of the cause of [the] injury.

Dr. Pluznyk restricted Mr. Suisse from working from November 17, 2015, through the present.

Dr. Bolt, an orthopedic surgeon, noted the following:

> [Mr. Suisse] had an increase of pain in the upper lumbar/lower thoracic region while shoveling asphalt. This is most consistent with a muscular strain/sprain or the type of activity that would aggravate pre-existing degenerative joint disease. The mechanism of injury (shoveling) would not be expected to cause the significant axial load of the spine that would cause a compression fracture in a 52-year-old male. In addition, x-ray report from January 23, 2013 documented an anterior wedge deformity at T11 which appeared remote. It appears then that the T11 deformity is chronic and not an acute fracture. The mechanism of injury, the imaging findings, and the patient's examination are consistent with a thoracic sprain/strain injury in November 2015, clouded by an aggravation of the patient's significant pre-existing spine pain. The patient has had fairly extensive treatment including pain management and chiropractic that would not typically be recommended for a sprain/strain injury. It is extremely likely that much of the above treatment was directed at the patient's chronic and

4

pre-existing spine pain. Whether or not the pain in the alleged injured region has significantly subsided, I think it more likely than not that the patient's current symptoms are greater than 50% due to his pre-existing conditions . . . rather than a sprain/strain injury sustained in November 2015. I believe that the patient is at maximum medical improvement for the sprain/strain injury. I would not recommend any permanent work restrictions for a sprain/strain without imaging findings in the presence of significant pre-existing disease. With regards to impairment based on the AMA sixth edition guidelines, tale 17-3, [Mr. Suisse] would qualify for a class I thoracic strain/sprain, default impairment 2%. Given the lack of objective findings, modifiers are not applicable, whole person impairment for the November 2015 work injury is 2%. No further treatment for that injury is recommended or anticipated.

In comparing the qualifications and opinions and rationales of Dr. Pluznyk and Dr. Bolt, the Court places greater weight upon Dr. Bolt's opinion. Dr. Bolt is an orthopedic surgeon and provided a thorough and detailed explanation of his opinion. Chiropractor Pluznyk did not. The Court holds Mr. Suisse is likely to prevail at a hearing on the merits that he sustained a thoracic sprain/strain injury arising primarily out of and in the course of his employment but not likely to prevail at a hearing on the merits that he sustained a T-11 compression fracture or an aggravation of his pre-existing condition.

Having determined Mr. Suisse appears likely to prove he sustained a thoracic sprain/strain injury arising primarily out of and in the course and scope of employment, this Court must determine the extent of his entitlement to medical and/or temporary disability benefits.

As for medical benefits, it is well-settled that an employer is legally obligated to provide to an injured employee reasonable and necessary medical treatment that is causally related to the work accident. *See* Tenn. Code Ann. § 50-6-204(a)(1)(A) (2016). In circumstances where an employer refuses to provide medical treatment and/or denies the employee's claim, the employer bears the risk of being held responsible for medical expenses incurred by the employee in the event the claim is deemed compensable. *See, e.g., GAF Bldg. Materials v. George*, 47 S.W.3d 430, 433 (Tenn. Workers' Comp. Panel 2001); *McCord*, at *13 ("[A]n employer who elects to deny a claim runs the risk that it will be held responsible for medical benefits obtained from a medical provider of the employee's choice[.]").

In this case, the parties do not dispute that Bevco did not provide Mr. Suisse with a panel of physicians as required by Tennessee Code Annotated section 50-6-204 (3)(A)(i) (2016). In addition, Ms. Merriman testified she told Mr. Suisse that he could go to ETMG. As such, this Court holds that Mr. Suisse sufficiently demonstrated that he is

5

likely to prevail at a hearing on the merits on entitlement to payment of ETMG's medical expenses and to a panel of orthopedic physicians to determine whether Mr. Suisse needs any additional treatment for his thoracic sprain/strain. Accordingly, the Court grants in part his request for medical benefits. Additionally, this Court holds that Mr. Suisse did not establish that he is likely to prevail at a hearing on the merits of entitlement to payment for Dr. Pluznyk's treatment. Therefore, the Court denies his request for those medical benefits.

The last issue this Court must consider is Mr. Suisse's eligibility for temporary disability benefits. An injured employee is eligible for temporary disability benefits if: (1) the worker became disabled from working due to a compensable injury; (2) there is a causal connection between the injury and the inability to work; and (3) the worker established the duration of the period of disability. *Jones v. Crencor Leasing and Sales*, 2015 TN Wrk. Comp. App. Bd. LEXIS 48, at *7 (Dec. 11, 2015) (citing *Simpson v. Satterfield*, 564 S.W.2d 953, 955 (Tenn. 1978)). Temporary total disability benefits are terminated either by the ability to return to work or attainment of maximum recovery. *Id.* An employee is entitled to receive temporary partial disability benefits, pursuant to Tennessee Code Annotated section 50-6-207(2), when an employee is temporarily unable to work but "the temporary disability is not total." *Jewell v. Cobble Constr. and Arcus Restoration,* 2015 TN Wrk. Comp. App. Bd. LEXIS 1, at *22 (Jan. 12, 2015).

Dr. Pluznyk took Mr. Suisse off work beginning November 17, 2015. Dr. Bolt concluded the following in his addendum:

> If this patient had seen me in the immediate aftermath of his November 2015 injury, I would have placed him on temporary work restrictions (alternate sitting and standing, no lifting greater than five pounds frequently, no lifting greater than 20 pounds maximum, no bending, stooping or twisting). Typical sprain/strain injuries are resolved within six weeks, but given the patient's significant pre-existing condition complicating recovery, I would have released the patient at maximum medical improvement with no permanent restrictions for the sprain/strain injury at 12 weeks after the injury date.

As stated previously, the Court places greater weight on Dr. Bolt's opinion. Ms. Merriman testified Bevco's lay off slip notes Mr. Suisse was laid off for "lack of work." With regard to whether Bevco could have accommodated the restrictions mentioned by Dr. Bolt, Ms. Merriman responded they "would try." However, she did not provide specific details. The Court finds Ms. Merriman's testimony about Mr. Suisse's lay off and Bevco's ability to accommodate his restrictions inconsistent and not credible. As a result, the Court finds Bevco did not establish it would have been able to accommodate the restrictions had they been in place. Therefore, this Court concludes that Mr. Suisse sufficiently demonstrated that he is likely to prevail at a hearing on the merits on the issue

6

of entitlement to temporary disability benefits for a period of twelve weeks.

**IT IS, THEREFORE, ORDERED** as follows:

1. Bevco is responsible for payment for Mr. Suisse's treatment with ETMG. In addition, Bevco shall provide Mr. Suisse with medical treatment for his thoracic sprain/strain injury as required by Tennessee Code Annotated section 50-6-204 (2016), by providing Mr. Suisse with a panel of orthopedic physicians.

2. As per the parties' stipulation, Mr. Suisse's temporary disability benefit is $718.02 per week.

3. Bevco shall pay Mr. Suisse past-due benefits for a period twelve weeks, in the amount of $8,616.24.

4. This matter is set for a Scheduling Hearing on March 30, 2017, at 2 p.m. Eastern. The parties must call 865-594-0091or 855-543-5041 toll free to participate in the Scheduling Hearing. Failure to appear by telephone may result in a determination of the issues without your further participation.

5. Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3) (2016). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.

6. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit by email at WCCompliance.Program@tn.gov or by telephone at (615) 253-1471 or (615) 532-1309.

**ENTERED this the 8th day of February, 2017.**

_[signature]_

**HON. LISA A. LOWE**
**Workers' Compensation Judge**

7

**APPENDIX**

Technical Record:
1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing
4. Employer's Response to Employee's Request for Expedited Hearing
5. Order Denying Employee's Request for a Decision Based upon Review of the File
6. Pre-Hearing Order
7. Parties Joint Response, Stipulations and Designation of Medical Records
8. Employer's Motion for Continuance Expedited Hearing
9. Employee's Response to Employer's Motion for Continuance Expedited Hearing
10. Notice of Deposition of Patrick M. Bolt
11. Order Denying Employer's Motion for Continuance
12. Employee's Expedited Hearing Brief
13. Employer's Response to Employee's Expedited Hearing Brief
14. Notice of Filing of Dr. Bolt's IME Report

The Court did not consider attachments to Technical Record filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence.

Exhibits:
1. Affidavit of Randy Suisse
2. First Report of Work Injury, Form C-20
3. Summit Statement of Injured
4. Separation Notice
5. Notice of Denial of Claim for Compensation, Form C-23
6. Wage Statement, Form C-40
7. Notice of Controversy, Form C-27
8. Medical Records with Table of Contents
   - East Tennessee Medical Group
   - Walter Pluznyk, D.C.
   - Patrick Bolt, M.D.
   - Chilhowee Pain Center
   - Comprehensive Pain Specialists
9. Updated IME report of Dr. Patrick Bolt
10. Screen shot of text message between Mr. Suisse and Ms. Merriman
11. Handwritten First Report

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 8th day of February, 2017.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|---|---|---|---|---|
| Roger Gilbert, Esq., Employee's Attorney | | | X | gilbertlawfirm@prodigy.net |
| Alex B. Morrison, Esq. Employer's Attorney | | | X | ABMorrison@mijs.com |

PENNY SHRUM, Court Clerk
WC.CourtClerk@tn.gov

9